# United States Court of Appeals
## For the First Circuit

No. 11-1589

MYRTA B. MORALES-CRUZ,

Plaintiff, Appellant,

v.

UNIVERSITY OF PUERTO RICO ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Myrta B. Morales-Cruz, pro se, with whom Daliah Lugo Auffant
and Lugo Auffant Law Offices were on brief, for appellant.
María D. Trelles Hernández, with whom Jorge E. Pérez Díaz and
Pietrantoni Méndez & Alvarez LLC were on brief, for appellees.

April 10, 2012

**SELYA**, **Circuit Judge**.  Plaintiff-appellant Myrta B. Morales-Cruz claims that she experienced gender-based discrimination and retaliation when the University of Puerto Rico School of Law (UPRLS) refused to extend her probationary period of employment and, thus, effectively removed her from its faculty. She sued UPRLS and a number of its officials under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).  The district court dismissed her action.  After careful consideration, we affirm.

## I.  BACKGROUND

This appeal follows a dismissal for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Consequently, we draw the facts from the amended complaint, supplementing them with materials susceptible to judicial notice.  See Haley v. City of Boston, 657 F.3d 39, 44 (1st Cir. 2011).

UPRLS hired the plaintiff in 2002 as an adjunct professor.  A year later, it offered her the tenure-track position of assistant professor, which carried with it a potential of tenure after the successful completion of a five-year probationary period.

During this five-year interval, the plaintiff taught various courses and, along with a male professor, led the community development section of the school's Legal Aid Clinic (the Clinic). At some point, the plaintiff's co-teacher began a sexual dalliance

with one of the Clinic's female students. The student became pregnant as a result of this liaison.

In 2008 — near the end of her probationary period — the plaintiff requested a one-year extension before undergoing her tenure review. This request went to the personnel committee, a three-professor body. Although the final arbiter of such matters is the University's administrative committee, that committee receives recommendations from both the UPRLS's personnel committee and its Dean.

While the matter was pending before the personnel committee, the Dean (defendant-appellee Roberto Aponte Toro) met with the plaintiff. He questioned her about her knowledge of the sexual relationship between her co-teacher and the pregnant student and chastised her for failing to report it to him. At the time there was no internal regulation either prohibiting student-teacher relationships or mandating reports about such relationships.

On May 7, 2008, the personnel committee recommended, by a two-to-one vote, that the plaintiff's extension request be granted. The dissenter, defendant-appellee Carlos Díaz-Olivo, wrote a forceful report as to why the extension should be denied. In this missive, Díaz-Olivo discussed the scandal involving the pregnant student and concluded that the plaintiff's actions regarding that matter manifested poor judgment, "personality flaws," and difficulty handling "complex and sensitive" situations.

On May 12, the Dean recommended the extension to the administrative committee but added that he shared the concerns expressed in Díaz-Olivo's dissent. He called the plaintiff "insecure," questioned her judgment, and noted that granting her tenure would "sentenc[e] the Law School and the University to thirty years with an intelligent, albeit immature . . . and fragile . . . resource."

When the plaintiff received word of these comments, she wrote to defendant-appellee Gladys Escalona, then Chancellor of the University and the chair of the administrative committee. The plaintiff says that she sent the letter both to clarify her actions with respect to the student-teacher relationship and to denounce the supposedly discriminatory remarks made by others. Shortly after the Dean learned of this correspondence, he wrote a letter to the administrative committee reversing his earlier position and recommending the denial of the one-year extension.

Chancellor Escalona appointed an ad hoc committee to review the plaintiff's case.[1] In the course of the ensuing review, the plaintiff alleges that the Chancellor, the Dean, Professor Díaz-Olivo, and certain members of the administrative committee (also named as defendants) continued to malign her character,

---

[1] The plaintiff claims that the appointment of an ad hoc committee was a deviation from the University's usual procedures. She forges no credible link, however, between this allegation and any claim of either discrimination or retaliation.

impugn her abilities, and refer to her dismissively. At the end of the day, the administrative committee voted to deny the extension. This refusal effectively terminated the plaintiff's employment at the expiration of the probationary period.

Title VII requires an individual who claims to have suffered discrimination or retaliation to file an administrative charge with the Equal Employment Opportunity Commission (EEOC) prior to commencing a civil action. See 42 U.S.C. § 2000e-5(b), (e)(1), (f)(1); Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 3 (1st Cir. 2001). Of course, a Title VII civil action is "constrained" by the allegations limned in the administrative charge; that is, "the judicial complaint must bear some close relation to the allegations presented to the agency." Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005).

In this case, the plaintiff seasonably filed an administrative charge. The defendants' position is that the charge, as framed, relates solely to retaliation and, thus, the plaintiff's discrimination claim should be dismissed for non-exhaustion of administrative remedies. See id. at 564-65.

We do not think that it is necessary for us to enter this controversy. The charge-filing requirement is mandatory but not jurisdictional, see id. at 565, and the plaintiff's discrimination claim is easily resolved on the failure of the pleadings.

Accordingly, we bypass the question of exhaustion of administrative remedies.

After obtaining a right-to-sue letter from the EEOC, see 42 U.S.C. § 2000e-5(f)(1), the plaintiff sued UPRLS and the individual defendants in the federal district court. The operative pleading is the plaintiff's amended complaint, which alleged gender-based discrimination, retaliation, and other claims not pursued on appeal. The defendants moved to dismiss, contending that the plaintiff had failed to state an actionable claim. See Fed. R. Civ. P. 12(b)(6). The district court granted the motion. Morales-Cruz v. Univ. of P.R., 792 F. Supp. 2d 205 (D.P.R. 2011). This timely appeal followed.

## II. ANALYSIS

A familiar standard applies to appellate review of Rule 12(b)(6) dismissal orders. We assay such orders "de novo, assuming the truth of all well-pleaded facts contained in the operative version of the complaint and indulging all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).

To survive a motion to dismiss, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Even though this rule "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plausibility is the touchstone by which the sufficiency of a complaint is gauged. See id. at 1949-50; Twombly, 550 U.S. at 570. To implement the plausibility standard, an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). See Iqbal, 129 S. Ct. at 1949-50. The court then must determine whether the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

## A. **Discrimination**.

The plaintiff first asserts that the district court misapplied these requirements in dismissing her claim of discrimination. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To

state a claim to relief, a complaint asserting sex discrimination must plausibly allege that the plaintiff experienced an adverse employment action taken on the basis of her gender. See id.

In this case, the amended complaint pleads only the "gender stereotyping" variation of sex-based discrimination. See Price Waterhouse v. Hopkins, 490 U.S. 228, 250-51 (1989) (plurality opinion), superseded in part by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071; Thomas v. Eastman Kodak Co., 183 F.3d 38, 59 (1st Cir. 1999). A gender-stereotyping claim arises when an individual suffers an adverse employment action because she either conforms or fails to conform to some stereotype or stereotypes attributable to her gender. See Thomas, 183 F.3d at 59-61; see also Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 355 (3d Cir. 1999) (observing that Title VII protects against an employer's decisions to "fir[e] women it perceives as not feminine enough (or as too feminine)").

In the amended complaint, the plaintiff asserts that she was unfairly terminated because the Dean and others expected her, as a woman, to report the student-teacher relationship. This is the heart of her gender-stereotyping claim[2] — but the allegation

---

[2] In her brief on appeal, the plaintiff suggests two other possible stereotypes: that women should be particularly disapproving of illicit relationships and that women should be more moral than men. It is clear beyond hope of contradiction, however, that "a plaintiff cannot constructively amend h[er] complaint with an allegation made for the first time in an appellate brief." Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 20 (1st

-8-

that she was held to a different standard because she was a woman does not follow from any <u>factual</u> content set out in the pleading or any reasonable inference therefrom. By the same token, the supposed stereotype of which the plaintiff complains is not one that, by common knowledge or widely shared perception, is understood to be attributable to women. To say that women, but not men, are expected to be forthcoming about the sexual foibles of others is sheer speculation — and speculation, unaccompanied by any factual predicate, is not sufficient to confer plausibility. As the Supreme Court has stated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949.

Here, moreover, the amended complaint fails to cross the plausibility threshold for another reason. It alleges no facts that would support an inference that UPRLS acted on the basis of gender, which is the centerpiece of a gender-stereotyping claim. <u>See</u> <u>Price Waterhouse</u>, 490 U.S. at 250-51.

The amended complaint alleges that various officials described the plaintiff as "fragile," "immature," "unable to handle complex and sensitive issues," engaged in "twisting the truth," and exhibiting "lack of judgment." These descriptors are admittedly unflattering — but they are without exception gender-neutral. All of them apply equally to persons of either gender and, while they

Cir. 2003).

might yield the conclusion that the plaintiff's termination was related to the professor-student fling, they do not support a reasonable inference that the defendants denied the plaintiff an extension of her probationary period because of failed gender stereotype expectations. By definition, terms that convey only gender-neutral meanings are insufficient to anchor a gender-stereotyping claim. See Weinstock v. Columbia Univ., 224 F.3d 33, 44 (2d Cir. 2000) (concluding that employer's description of a female employee using the words "nice" and "nurturing" could not support a gender-stereotyping claim).

The only gender-specific comment cited by the plaintiff involves her allegation that the defendants sometimes referred to her as "that girl" during the course of the extension discussions. She strives to persuade us that this characterization leads to the plausible conclusion that her probationary term was not extended because of stereotypes associated with her gender. We are not convinced.

This allegation, without more, does not support a reasonable inference of adverse action based on a gender stereotype. After all, "Title VII does not prohibit . . . simple teasing, offhand comments, and isolated incidents (unless extremely serious)." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citations and internal quotation marks omitted). The plaintiff offers no meaningful context for the use of the term

-10-

"that girl."  On this record, that usage does not amount to more than an offhand comment.

The plaintiff tries to blunt the force of this conclusion on the basis that she is not making a sexual harassment or hostile work environment claim.  This is wishful thinking; the rule that stray remarks, without more, cannot ground a cause of action applies with equal force in the gender-stereotyping context.  See Price Waterhouse, 490 U.S. at 251 ("Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision.  The plaintiff must show that the employer actually relied on her gender in making its decision."); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (noting that Title VII requires courts "to separate significant from trivial harms").  The plaintiff, a woman in her mid-40s, may well have found the reference to her as a "girl" to be offensive, but the antidiscrimination laws "do[] not create a general civility code for the workplace."  Ahern v. Shinseki, 629 F.3d 49, 59 (1st Cir. 2010); see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).

That ends this aspect of the matter.  Stripped to factual content, the amended complaint fails the test of plausibility.  It states no actionable claim of gender stereotyping or other discrimination.

## B.  Retaliation.

We turn next to the plaintiff's claim of retaliation. Title VII makes it unlawful for an employer to take materially adverse action against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  To state a cause of action under this portion of the statute, the pleading must contain plausible allegations indicating that the plaintiff opposed a practice prohibited by Title VII and suffered an adverse employment action as a result of that opposition.  See id.

The plaintiff alleges that she was retaliated against for writing to the Chancellor to complain about the "discriminatory" comments made in the course of her request for an extension.  In support of this allegation, she points out that after she sent her letter the Dean reversed his position on her extension.  This construct suffers from a fatal flaw: her factual allegations do not support a reasonable inference that she was engaging in protected conduct when she opposed the remarks made.

While Title VII shields an employee who opposes conduct that may not actually prove to be discriminatory, the employee must at the very least have a "'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (quoting Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 134

-12-

(2d Cir. 1999)); see Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 48 (1st Cir. 2010). For the reasons already explained, see supra Part II(A), the facts alleged in the amended complaint provide no reasonable basis for inferring that the comments cited reflected gender-based discrimination. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (per curiam); Fantini, 557 F.3d at 31-32. Those comments were unarguably gender-neutral and do not afford an objectively reasonable foundation for a retaliation action.[3] It follows inexorably that the amended complaint fails to set forth a plausible claim of retaliation.

## III. CONCLUSION

We need go no further. It may have been unfair for the plaintiff to lose her opportunity for continued employment because she failed to disclose that her co-worker impregnated a student. But absent a showing of gender-based discrimination or retaliation, Title VII does not provide a cause of action for such an injustice. See Ahern, 629 F.3d at 51 (explaining that Title VII is "not intended to function as a collective panacea for every work-related experience that is in some respect unjust, unfair, or unpleasant").

**Affirmed**.

---

[3] It is apparent from the amended complaint that the letter to the Chancellor was sent prior to the conversations in which the plaintiff was allegedly referred to as "that girl."

-13-