Dr. Rebecca ALBERTI, Plaintiff(s),

v.

**UNIVERSITY OF PUERTO RICO, et al., Defendant(s).**

**Civil No. 08–1484 (DRD).**

United States District Court, D. Puerto Rico.

June 21, 2012.

232

Manuel R. Suarez–Jimenez, Manuel R. Suarez Law Office, San Juan, PR, for Plaintiff.

Diego Ramirez–Bigott, Raquel M. Dulzaides, Jimenez, Graffam & Lausell, San Juan, PR, for Defendant.

## ORDER

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are the following motions, to wit: (a) *Plaintiff's Motion for Reconsideration under Rule 59(e)*, Docket No. 217; (b) *Opposition to Plaintiff's "Motion for Reconsideration,"* Docket No. 219; and (c) *Plaintiff's Motion for Vacatur of Judgment and for Oral Argument*, Docket No. 225. For the reasons set forth below, plaintiff's requests for re-

consideration and for oral argument, are denied.

## The motion for reconsideration standard

■ Motions for reconsideration are generally considered either under Rules 59 or 60 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), depending on the time such motion is served. *Pérez–Pérez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 284 (1st Cir.1993). It is settled that "[a] motion for reconsideration 'does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence **or advance arguments that could or should have been presented to the district court prior to the judgment.'**" (Emphasis ours). *Marks 3–Zet–Ernst Marks GmBh & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15–16 (1st Cir.2006). Thus, a motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated and decided by the Court. *Standard Química de Venezuela v. Central Hispano International, Inc.*, 189 F.R.D. 202, n. 4 (D.P.R.1999). In sum, "[a] party cannot use a Rule 59(e) motion to rehash arguments previously rejected or to raise ones that 'could, and should, have been made before judgment issued.'" *See Soto–Padró v. Public Buildings Authority, et al.*, 675 F.3d 1, 9 (1st Cir.2012) (citations omitted). The Court should also renew and reconsider whether it "patently misunderstood a party . . . or has made an error not of reasoning by apprehension." *Ruiz Rivera v. Pfizer Pharmaceuticals, LLC*, 521 F.3d 76, 82 (1st Cir.2008) (quoting *Sandoval Díaz v. Sandoval Orozco*, No. 01–1022, 2005 WL 1501672 at *2 (D.P.R. June 24, 2005)) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990)). *See also Mulero–Abreu, et al. v. Puerto Rico Police Department, et al.*, 675 F.3d 88, 94–

95 (1st Cir.2012), authorizing reconsideration in cases of "manifest error of law."

■ The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration. *Sierra Club v. Tri–State Generation and Transmission Assoc., Inc.*, 173 F.R.D. 275, 287 (D.Col.1997); *Hatfield v. Board of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir.1995). Notwithstanding, any motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend a judgment under Fed.R.Civ.P. 59(e), if it seeks to change the order or judgment issued. *Id.* Hence, "motions for reconsideration are 'extraordinarily remedies which should be used sparingly.'" *Trabal Hernandez v. Sealand Services, Inc.*, 230 F.Supp.2d 258 (D.P.R.2002); *Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir.1990). **"In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied."** (Emphasis ours). 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 2810.1 (2d ed.) (2012).

## Legal Analysis

### A. *Plaintiff's Objections.*

The core of Dr. Rebecca Alberti's (collectively "plaintiff" or "Ms. Alberti") reconsideration is her disagreement with the Court's ruling granting summary judgment for the defendants. *See Amended Opinion and Order Nunc Pro Tunc*, Docket No. 216, and *Judgment*, Docket No. 215. The Court notes that plaintiff's reconsideration request is cluttered with general conclusory allegations and accusations, which lack specificity as to anything, particularly as to the lack of "apprehension" and/or "manifest error of law" of the Court. Plaintiff specifically fails to specify the

fact(s) and/or conclusion(s) of law that constitutes a manifest error of law. For example:

a. Plaintiff alleges that after reviewing the Court's *Amended Opinion and Order*, Docket No. 216, "it is evident that the Court engaged in a manifest abuse of discretion and errors of laws, patently misunderstood the plaintiff and made errors of apprehension." *See* Docket No. 217, page 1.

b. Plaintiff alleges that "[m]ore than three (3) years after filing this case and Plaintiff spending approximately $100,000 in litigation related costs, this Court granted defendant's [sic] motion for summary judgment making findings that are in conflict with the record and unfairly punished the Plaintiff for technical problems were [sic] out of her control." *See* Docket No. 217, page 2.

c. "The Court also punished the Plaintiff for failure to produce translated documents after denying her a motion for extension of time to file them." *See* Docket No. 217, page 2. "In contrast, the Court granted the defendants multiple extensions to file their translated documents." *Id.*[1]

d. "Another factor that greatly concerns the Plaintiff is the O & O's fractioning and compartmentalizing the uncontested facts of the case, instead of considering the totality of them *in toto*." *Id.*

e. "Of greater concern, however, is that the Court's O & O reasoning has created the impression that preventing the case from becoming "reportable" was more important than considering the merits of the case by going to trial." *Id.*

f. "The record shows signs that the Court has decided against celebrating a trial prior to adjudicating defendant's the motion [sic] for summary judgment when, for example, denied Plaintiff's motion for an extension of time to file her translated documents, and when the judgment was entered precisely of [sic] the date the case could become 'reportable.'" *Id.*

g. Plaintiff further alleges that he had disagreed as to the content of the *Minutes* of July 7, 2011, Docket No. 181, simply because "it was impossible for the Plaintiff to comply with this alleged next day midday deadline of conventionally filing the exhibits, and the undersigned attorney so informed the Court that night." *See* Docket No. 217, page 3. On this matter, plaintiff allege that *Plaintiff's Motion for Amendment/Correction of the Minutes of July 7, 2011*, Docket No. 185, was never "adjudicated" by the Court. But *see* defendants' *Motion to Strike*, Docket No. 186; *Order* of July 12, 2011, Docket No. 187; defendants' *Motion in Opposition to Plaintiff's Motion for Amendment/Correction of the Minutes of July 7, 2011*, Docket No. 188; *Minutes* of August 9, 2011, Docket No. 200; *Plaintiff's Urgent Concerns Regarding the Court's August 9, 2011 Telephone Conference and for Reconsideration*, Docket No. 201, and *Order* of August 12, 2011, Docket No. 202.

h. Plaintiff disagreed with the Court's finding related to plaintiff's failure to comply with the Anti–Ferret rule, as the "ma-

---

1. The Court makes reference to *Note 1*, of the defendants' *Opposition to Plaintiff's "Motion for Reconsideration,"* Docket No. 219, page 5, which reads as follows:

> It is important to note that in the Amended Opinion and Order the Honorable Court indicated that it would not consider Plaintiff's Memorandum because it was untimely. However, the Court clarified that "even if it would have considered Plaintiff's Memorandum, its decision to dismiss this case would not have changed, because Plaintiff has not met the burden of producing specific facts sufficient to defeat the swing of the summary judgment scythe." (Docket 216, p. 2).

jority of the exhibits were identified by label, exhibit number and/or a description by contexts and/or date and the Index filed on July 21, 2001[sic] (D.E. # 193–1)." (Emphasis ours). *Id.* "The Court's finding that Plaintiff failed to provide particularized citations to the record is in direct conflict with the record, and constitutes reversible error." *Id.*

The Court makes reference to two specific motions wherein the plaintiff clearly violated the Anti–Ferret Rule by not referring to the **specific portions [references] of the record.** The exhibits filed with *Plaintiff's Opposing Statement of Material Facts,* Docket No. 179 were filed in the Spanish language, and the corresponding certified English translations were filed on November 2 and 23, 2011, *see* Docket entries No. 218, 222, and the *Order* of November 23, 2011, Docket No. 224, wherein plaintiff's motions filing the certified English translations were stricken from record, as being almost two months tardy. Plaintiff filed the certified English translations on November 2 and 23, 2011, that is, more than four months after the filing of the exhibits in the Spanish language on July 6 and 8, 2011, and almost two months after the Court's *Opinion and Order.* *See* Docket entries No. 179 and 184.

- *Plaintiff's Opposing Statement of Material Facts,* Docket No. 179.[2]

 SUMF No. 5 at pages 7–8 (the exhibit number was left in blank, i.e., "exhibit ____.")

 SUMF No. 6 at page 8 (the exhibit number was left in blank, i.e., "exhibit ____").

 SUMF No. 7 at pages 9–11 ("exhibit ____," as well as multiple exhibits references were left in blank).

 SUMF No. 10 at page 12 ("see pages ____, lines _____").

SUMF No. 12 at pages 14–15 ("show cause hearing of ____, . . . dated ____").

SUMF No. 13 at page 16 ("HRSA proposal of ____, page ____, and ____").

SUMF No. 15 at pages 17–18 ("exhibit ____, . . . pages 9–12. ____").

SUMF No. 16 at page 19 ("exhibit ____, pages ____. At page ____")

SUMF No. 17 at pages 20–22 ("exhibit ____," as well as multiple (8 times) exhibits references were left in blank).

SUMF No. 18 at page 23 ("defendants' statements numbers 8, ____, ____").

SUMF No. 19 at page 24 ("deposition dated ____, pages ____, show cause hearing dated ____, pages ____").

SUMF No. 20 at page 25 ("statement number ____ and ____ . . . exhibit ____").

SUMF No. 21 at page 26 ("e-mail communication dated ____").

SUMF No. 22 at page 26 ("page ____, exhibit ____").

SUMF No. 23 at page 27 ("page ____, identified as exhibit ____").

SUMF No. 26 at page 36 ("See exhibit ____").

- *Opposition to Plaintiff's "Opposing Statement of Material Facts,"* as being unsupported by the record and/or a record reference, *see* Docket No. 194.

 ¶ 4 at pages 11–14.

 ¶ 5 at pages 14–15.

 ¶ 6 at page 15.

 ¶ 8 at page 16.

 ¶ 9 at pages 16–17.

 ¶ 10 at pages 17.

 ¶ 12 at pages 18–19.

**2.** Statement of Uncontested Material Facts ("SUMF").

¶ 13 at page 19.
¶ 15 at page 19.
¶ 16 at pages 19–20.
¶ 17 at page 20.
¶ 18 at page 20.
¶ 19 at page 21.
¶ 20 at page 21.
¶ 21 at page 21.
¶ 22 at pages 21–22.
¶ 23 at pages 22–23.
¶ 24 at page 23.
¶ 25 at pages 23–25.
¶ 26 at pages 25–28.
¶ 27 at page 28.
¶ 28 at page 29.
¶ 41 at page 34.
¶ 46 at page 35.
¶ 47 at page 35.
¶ 48 at pages 35–36.
¶ 49 at page 36.
¶ 50 at page 37.
¶ 51 at page 37.
¶ 52 at page 37.
¶ 53 at page 38.
¶ 55 at page 38.
¶ 57 at pages 38–39.
¶ 60 at page 39.
¶ 61 at page 39.
¶ 62 at page 40.
¶ 63 at page 40.
¶ 64 at page 40.
¶ 65 at page 41.
¶ 66 at page 41.
¶ 67 at page 41.
¶ 68 at page 42.
¶ 69 at page 42.
¶ 70 at page 43.
¶ 71 at page 44.
¶ 72 at page 44.
¶ 73 at page 45.
¶ 74 at page 45.

¶ 76 at page 45.
¶ 77 at page 46.
¶ 79 at page 47.
¶ 81 at page 47.
¶ 82 at page 48.
¶ 83 at page 48.

It is patently clear that plaintiff's counsel indeed disagrees with the Court's ruling in all or almost every finding of fact and conclusion of law made by the Court. However, the answer is simple, the Court record illustrated above speaks by itself.

- The record shows that the Court held three (3) hearings to show cause, Docket entries No. 35, 36, 37, which were interrupted by *Plaintiff's Urgent Motion for Conversion of Show Cause Hearing Scheduled for November 3, 2008 to a Status Conference,* Docket No. 48. Thereafter, the Court held thirteen (13) conferences in Chambers, *see* Docket entries No. 50, 55, 57, 81, 83, 102, 108, 113, 120, 154, 181, 200, 210.

- The Court further notes that the parties filed a total of twenty-seven (27) motions requesting extension of time *albeit* for several reasons, two (2) were joint motions; ten (10) motions filed by the plaintiff, and fifteen (15) motions filed by the defendants. For a total of twenty-seven (27) motions requesting extensions of time on several grounds followed by twenty-seven (27) orders entered. However, the Court wishes to clarify that amongst the numerous motions for extension of time filed by the parties, the defendants filed three (3) motions requesting time to file the certified English translations of voluminous official records of the University of Puerto Rico, *see* Docket entries No. 38, 42, 189, and *Orders,* Docket entries No. 39, 43, 190.

But *see also* the defendants' motions submitting the certified English translations, Docket No. 44 (47 pages of translated documents); Docket No. 46 (25 pages of translated documents); and, Docket No. 197 (465 pages of translated documents).

- Plaintiff, however, filed two motions requesting extensions of time to file certified translations, *see* Docket No. 129, and *Order,* Docket No. 131, and *Motion for Leave to File Exhibits in Spanish Pending Translation to English Pursuant to Loc. R. 10(b),* wherein plaintiff requested until August 29, 2011 to file the certified translations, **knowing that trial was set for August 15, 2011,** and the defendants' motion for summary judgment was pending before the Court, due to plaintiff's failure in submitting the translated documents, *see* Docket No. 195, and *Order,* Docket No. 196. *See also Minutes* of July 7, 2011, Docket No. 181. (Emphasis ours).

- The Court is cognizant that, on July 6, 2011, Ms. Alberti filed *Plaintiff's Opposing Statement of Material Facts,* Docket No. 179, which includes 106 exhibits, most of them in the Spanish language. Plaintiff failed to file a motion requesting leave to file exhibits in the Spanish language, as well as an extension of time to file the certified English translations, as required by Local Civil Rules 5(g) and 43.

- On July 7, 2011, the Court held a Pretrial/Settlement Conference, *see Minutes* of July 7, 2011, Docket No. 181. The *Minutes* reflect that plaintiff had informed the Court that "[she] still have [sic] (has) 180 exhibits and the motion opposing the defendants' motion for summary judg-

ment, which he has been unable to file electronically due to the volume of the documents." Docket No. 181. "The Court inquired whether some of the documents pending to be filed were part of the record." *Id.* "If so, then counsel should make a cross-reference to those exhibits, instead of filing the same documents again." *Id.* The Court further ordered "[t]he Clerk of the Court [to] accept a copy of plaintiff's 180 exhibits in hard copy, as it appears that plaintiff's counsel is having technical difficulties filing them electronically." *Id.* "Plaintiff is authorized to file the exhibits **only**." *Id.* at page 2 (emphasis on the original). The Court further ordered the defendants to review the 180 exhibits to be filed by the plaintiff, and inform the Court "whether any of the exhibits amend in any way plaintiff's opposition to the statement of uncontested facts." *Id.* "The Court specifically admonished plaintiff's counsel that no amendments will be allowed at this stage of the proceedings, and no further extensions of time will be allowed to file any other pleading and/or the exhibits." *Id.* The *Minutes* further reflect that the Court "notes that plaintiff has failed to comply with the filing dates, hours, and deadlines ordered by the Court." *Id.* "Moreover, the record shows that the pleadings filed by plaintiff exceed the page limitation allowed by the Court, and the same have been filed without prior leave of Court." *Id.* Lastly, the Court reminded the parties that the jury trial was set for August 15, 2011. Docket No. 181.

- The Court record clearly shows that plaintiff's certified English translations were filed almost two months

after the *Judgment* was entered, that is, on November 23, 2011, and after plaintiff's motion for reconsideration was filed. *See* Docket entries No. 215, 217, 218, 220, 222, 224.[3]

- Lastly, the Court notes that the exhibits filed by plaintiff on July 8, 2011, were in the Spanish language, *see* Docket entries No. 184, 195, and the *Order* of July 28, 2011, Docket No. 196. Hence, the exhibits filed by plaintiff barely three (3) weeks prior to the scheduled trial, and after almost three (3) years of litigation, were filed in Spanish. Indeed, the Court and the defendants had to wait until November 2, 2011, to receive the first set of the translated exhibits, and until November 23, 2011 when the second set for translated exhibits were filed, *see* Docket entries No. 218 and 222. Thus, the Court considered plaintiff's "effort too little and too late." *See Order* of November 23, 2011, Docket No. 224.

■ i. Plaintiff further alleges that "[t]he Court failed to take into consideration an event that was subject to judicial notice: that Plaintiff had been dismissed after she filed the case at bar." *See* Docket No. 217, page 6. The Court record shows that plaintiff filed an *Amended Complaint* on July 15, 2008, Docket No. 8, page 3, wherein plaintiff made reference to the dismissal letter of June 12, 2008 sent to her by the Chancellor José Carlo-

Izquierdo. The record also shows that the show cause hearings were held on August 19, 21–22, 2008, *see* Docket entries No. 35, 36, 37. Hence, the Court has been premised since the early stages of the instant case as to the fact that plaintiff was terminated after the filing of this proceeding. Consequently, plaintiff's argument as to the Court's alleged failure to consider the fact that Ms. Alberti was terminated after the filing of the instant case is misleading at best and it is devoid of veracity, and certainly does not constitute new evidence under Fed.R.Civ.P. 59(e). Again, the Court record is clear and speaks by itself.

j. As to the analysis made by the Court of the defendants' motion for summary judgment, plaintiff allege that "the Court engaged in reversible error by regarding Defendant's [sic] statements as uncontested because Plaintiff complied with L.Cv.R. 56(c)." *See* Docket No. 217, page 4. Plaintiff's conclusory statement lacks specificity as to what exactly constitutes reversible error.

k. Plaintiff further alleges that, "[o]n July 27, 2011, plaintiff filed a motion for extension of time to file the translated exhibits. (D.E. # 195)." *Id.* However, the Court record shows otherwise, *see Motion for Leave to File Exhibits in Spanish Pending Translation to English Pursuant Loc. R. 10(b)*, Docket No. 195. What plaintiff was indeed requesting was another extension of time until August 29, 2011

---

3. The Court refers to plaintiff's language in *Plaintiff's First Submission of Certified Translations of Her Exhibits*, Docket No. 218:

> On the 28th of octuber [sic], 2011, Plaintiff filed a Motion for Reconsideration (D.E. # 217). In this motion, plaintiff moves for, *inter alia*, leave to file the translations for her exhibits that establish contested facts that would defeat defendant's [sic] motion for summary judgment.
> **After spending approximately $20,000.00 in these translations,** and in excess of cau-

> tion because of time constrains and the probability that this case will be appealed, Plaintiff will comply with her legal duty and file for the record all of the translated exhibits that support her statement that creates issued of material facts.
> The filing of these translated exhibits will be done in groups of ten (10) due to the megabytes limitations of the ECF system. (Emphasis ours).

to file the English translations of the additional exhibits that were filed on July 8, 2011. The Court record shows that counsel knew since at least May 3, 2011 that the jury trial was set for August 15–September 9, 2011, *see Minutes* of May 3, 2011, Docket No. 154. Hence, plaintiff's request for an extension of time until August 29, 2011 to file certified English translations is tardy, not to mention ludicrous, and "too little and too late." *See Rodríguez v. Municipality of San Juan, et al.*, 659 F.3d 168, 175 (1st Cir.2011); *Dávila v. Corporación de Puerto Rico para la Difusión Pública*, 498 F.3d 9, 12–14 ("Because the untranslated documents had no potential to affect the disposition of the case at the summary judgment stage, we conclude that the mere presence of the of the untranslated documents in the district court record cannot support a claim of reversible error." (Citation omitted)).

l. Plaintiff argues that "there is ample evidence showing circumstancial [sic] evidence of discriminatory national origin *animus*." *See* Docket No. 217, page 5. "Trivializing as 'stray remarks' the uncontested event that student defendants referred to Plaintiff Alberti as 'gringa' and 'americana' during a student meeting presided by Dean Sanchez is tantamount to labeling the use of the pejorative word "nigger" in a racial discrimination case filed by an afro american plaintiff." *Id.* Moreover, plaintiff also alleges that in her *Memorandum of Law in Opposition to Defendant's* [sic] *Motion for Summary Judgment*, Docket No. 191, plaintiff "shows the existence of a common law conspiracy," and the "reasoning of the O & O reflects failure to consider the totality of the circumstances, precisely, because the Court discarded and did not consider Plaintiff's evidence, documents and sworn statements that contested defendants statement of facts." *See* Docket No. 217, page 6.

m. Plaintiff claims that the Court also failed to take into consideration that plaintiff "had been dismissed after she filed the case at bar." *Id.*

n. Plaintiff also alleges that "[t]he dismissal of Plaintiff's of [sic] her First Amendment claim is extremely troubling because the O & O's contradictory logic." *Id.* "At one time, the Court argues that the Plaintiff has no retaliatory cause of action because her complaints and actions against students Iris Ramos, et al were made during the course of her academic duties and responsibilities, and then, argues that she is not entitled to the academic freedom exception of *Garcetti* because she did not engage in actions protected by academic freedom." *See* Docket No. 217, pages 6–7.

o. "Also, the fact is that Dean Suane Sanchez's condoned defendant students use of the pejorative words 'gringa' and 'americana' when she had a duty of stopping and dissasociating [sic] herself from these statements." *See* Docket No. 217, page 7. "Her failure to do so made those statements hers, considering that they were made during the course of the conspiracy." *Id.*

The Court finds that plaintiff's arguments are merely conclusory allegations, which fail to meet the test of Fed.R.Civ.P. 59(e), that is, the Court's abuse of discretion; newly discovered evidence; and, a manifest error of law. Furthermore, the Court also finds that plaintiff's arguments are not new, and constitute a mere rehashing of the same arguments made by plaintiff throughout the course of this proceeding, which have been ruled upon by the Court, and plaintiff simply refuse to accept. The Court invites the plaintiff to review the orders entered by the Court in the thirteen (13) *Minutes* held during the course of this proceeding, *see* Docket entries No. 50, 55, 57, 81, 83, 102, 108, 113, 120, 154, 181, 200, 210, as well as all the

separate orders entered in the instant case regarding the First and Eleventh Amendments issues; discovery issues, amongst others.

■ Plaintiff also questions the Court's finding regarding the "pejorative words of gringa and americana" as stray remarks, and the Court's determination to dismiss the allegation of the common law conspiracy. As to plaintiff's arguments regarding the use of "pejorative words of gringa and americana," the Court suggests the reading of *Morales–Cruz v. University of Puerto Rico, et al.*, 676 F.3d 220, 225–226 (1st Cir.2012). In *Morales–Cruz*, the Court held that "Title VII does not prohibit ... simple teasing, offhand comments, and isolated incidents (unless extremely serious)." 676 F.3d at 225–226, citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ... "*see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (noting that Title VII requires courts 'to separate significant from trivial harms')." 676 F.3d at 226. The Court reiterates that, in the instant case, the remarks allegedly made to Ms. Alberti by students were isolated and stray remarks, none decision makers, as opposed to a consistent pattern by the defendants with the intent to cause harm to the plaintiff.[4] The record is devoid of evidence showing otherwise.

### B. *Plaintiff's "New" Argument.*

■ It is well settled that "[a] party cannot use a Rule 59(e) motion to rehash arguments previously rejected **or to raise ones that 'could, and should, have been made before judgment issued.'"** (Emphasis ours). *See Soto–Padró v. Public*

*Buildings Authority, et al.*, 675 F.3d at 9 (citations omitted). **Nor "a vehicle for a party to undo its procedural failures...."** (Emphasis ours). *Marks 3–Zet–Ernst Marks GmBh & Co. KG v. Presstek, Inc.*, 455 F.3d at 15–16. "[N]or to repeat old arguments previously considered and rejected." *Trabal–Hernandez*, 230 F.Supp.2d at 259.

■ In the instant case, plaintiff is now raising for the first time a violation under Title VII for hostile work environment, *see* Docket No. 217, page 6. The Court has reviewed the four (4) complaints filed by plaintiff. The Court found that the alleged violation for hostile work environment was not included in the *Complaint* or any of the three (3) amended complaints, or constituted merely conclusory allegations without a factual skeleton to buttress the argument, *see* Docket entries No. 1, 8, 56, 123. Hence, plaintiff is simply barred from raising this new argument after a *Judgment* has been entered. Plaintiff's new argument is completely out of bounds, and it is impermissible at this stage of the proceedings. The argument merely constitutes just another desperate effort by plaintiff to "amend" the complaint after *Judgment* has been entered. Plaintiff's effort, however, is too late, and procedurally unacceptable. The Court briefly explains.

The Court has reviewed all the pleadings and supporting documents included in the record. There is simply not one *scintilla* of supporting allegation, other than purely conclusory in nature, in the record that shows that plaintiff has any intention of pursuing a claim for hostile work environment under Title VII, at any stage of

---

4. Generally, the record shows that plaintiff Alberti was never told directly that she was "too American," "gringa," or "Americana." The references made by plaintiff Alberti are hearsay or personal conclusions reached by plaintiff based on comments and/or opinions of third parties.

the proceedings. In her motion for reconsideration, plaintiff Alberti tried to introduce a new cause of action, as an alleged violation under Title VII for "hostile work environment," as a last intent to grasp the last straw. However, plaintiff's general use of the word "harass" and/or "harassment" does not automatically translate a discriminatory claim for national origin into a claim for hostile work environment. The record clearly shows otherwise. Again, the allegations are purely conclusory in nature. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In the *Complaint* and the *Amended Complaint*, Docket entries No. 1 and 8, plaintiff did not use the word "harass" or made any reference to any type of harassment due to a hostile work environment.

In the *Second Amended Complaint*, Docket No. 56, plaintiff alleges: "Defendants' discriminatory behavior was part of a conspiracy, custom, pattern and practice of unlawful harassment and discrimination of the Plaintiff born and raised in the continental United States." *See* Docket No. 56, ¶ 135, page 37. Once again, plaintiff's allegations are purely conclusory. At the end of the *Second Amended Complaint*, plaintiff pled: "Enjoin Defendants, their officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff." *See* Docket No. 56, page 39. Plaintiff attached to the *Second Amended Complaint* a copy of the unsigned and undated Charge of Discrimination together with a letter of September 11, 2008 from the U.S. Equal Employment Opportunity Commission, San Juan Local Office, wherein plaintiff clearly based her discrimination claim on "national origin" and "retaliation." *See* Docket No. 56–2. Plaintiff alleges that, "[d]uring my tenure at Respondent's I was subjected to **dis-**

**criminatory comments and conduct based on my national origin (U.S.A.-mainland)** and because I was perceived as **"too American"** in my personal conduct and management style." *Id.* "For this reason a group of employees (professors and administrative staff) harassed me and conducted a campaign against me to discredit me as a professional, and which resulted in the termination from my three positions." *Id.* "I believe **I was discriminated against because my national origin, in violation of Title VII** of the Civil Rights Act of 1964, as amended." *Id.* (Emphasis ours). Again, a purely conclusory pattern of facts. The EEOC issued the Notice of Right to Sue within 90 Days on November 19, 2008. *See* Docket No. 56–3.

In the *Third Amended Complaint*, Docket No. 123, plaintiff alleges: "Defendant U.P.R. discriminatory behavior was part of a conspiracy, custom, pattern and practice of unlawful harassment and discrimination of the Plaintiff born and raised in the continental United Staes [sic]." *See* Docket No. 123, ¶ 135, page 38. In that same document, in the prayer for relief, plaintiff pled: "Enjoin Defendants, their officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff." *See* Docket No. 123, page 39.

The record also reflects that during the show cause hearings, when plaintiff was asked what brought her to Puerto Rico, Ms. Alberti answered: "Well, my family background, my mother was born in Ponce, Puerto Rico, so I have a—I also consider myself Puerto Rican, I consider myself Puerto Rican American." *See* Transcript of Order to Show Cause Hearing of August 19, 2008, Docket No. 164–1, page 26.

At this point, the Court reminds counsel that plaintiff was originally hired by the defendant from August 2001 to December

2002, when she resigned voluntarily. *See* Transcript of Order to Show Cause Hearing of August 19, 2008, Docket No. 164–1, pages 34–35. However, when plaintiff was asked as to her first employment with the U.P.R., plaintiff answered: "Well, at the time, I was also nine months pregnant, eight, nine months pregnant, I was pretty close to delivering, I knew that the new dean was going to be Suane Sanchez, and I knew they didn't like me and they were going to get rid of me, so I resigned. I sent a letter of resignation."[5] *Id.* Hence, when plaintiff accepted to work again with the defendant in the year 2005, plaintiff had a purely subjective conclusion as to her environment. She claims not being wanted but her letter of termination revealed otherwise, *see Infra* n.5, when she "resigned." In sum, plaintiff Alberti accepted her new job offer in the year 2005 well aware that her subjective feelings were as to what she concluded her environment was.

At the deposition of plaintiff Alberti taken on May 25, 2010, Ms. Alberti was asked:

Q. The first time you ever witnessed a comment that reflected national origin discrimination was when?

A. Well, not that I was . . ., okay, there are some where I was witness to it, but there were some that before I even met them, before I even got there, I heard from them, from Dra. Rosa and from Crouch, that they were saying, you know, that they didn't want me there. They didn't want me there because I was American.

. . .

Q. Okay, so Dr. Suane Sánchez made comments in front of Evelyn Crouch which reflected national origin discrimination against you; is that your testimony?

A. Yes.

Q. And that was before you first worked for the University of Puerto Rico; correct?

A. Yes, they hadn't even met me yet.

Q. They hadn't even met you yet?

A. And they didn't want me.

Q. And they didn't want you?

A. Uh-huh.

Q. And who else, aside from Dr. Suane Sánchez, made comments reflecting national origin discrimination?

A. At this time, that I could recall, that is it right now that [sic] I can recall.

. . .

Q. So when Gladys Vélez told you, in private, that you're a "gringa" and "americana", and you don't understand how things should be, what did you do?

A. I just ignored her and controlled myself, like I was doing since I got there, but obviously, that was part of the reason why I didn't want to go back the second time and they had to convince me; when Suane said "that's not going to happen again, everyone's going to treat you differently", you know, "things are not going to happen like they did the first time".

---

5. However, the record shows otherwise. On December 9, 2002, Chancellor José R. Carlo–Izquierdo wrote a letter to plaintiff Alberti informing her the cancellation of her appointment as Director of the Family Nurse Practitioner Proposal Program and Project, a trust position, due to the fact that "[t]he academic proposal for that project has not been approved by the appropriate academic forums and the funds assigned by HRSA have been withdrawn." *See* Docket No. 164–6, and the certified English translation at Docket No. 197–2. Plaintiff never proved that the alluded economic business reasons were a sham.

*See* Docket No. 164–2, Transcript of plaintiff Alberti's Deposition taken on May 25, 2010, pages 6, 7, 104, 119.

At the deposition of June 18, 2010, plaintiff Alberti was asked:

Q. And when you say that you met the qualifications, but Assistant Dean Suane Sánchez didn't want you there because you were American, how did you arrive to this conclusion specifically?

A. Dr. Crouch and Dr. María Rosa told me.

Q. Okay. So you arrived at this conclusion because two other people told you?

A. Yes.

. . .

Q. So if I understand you correctly, it wasn't . . .

A. I don't think she wanted me there because I was American.

Q. Okay, and that's what we want to get to the bottom of this.

A. And from the comments that I had heard from Dr. Crouch and Dr. Rosa and from her; she just didn't treat me, in general, the same way she would treat other people.

Q. But did she ever insult you?

A. No, no, just non verbal.

Q. Non verbal?

A. Non verbal.

*See* Docket No. 164–18, Transcript of plaintiff Alberti's Deposition taken on June 18, 2010, pages 21, 22, 25.

*See also* the following testimony by plaintiff Alberti:

Q. . . . Now, in this Item 8 of Exhibit 3, you state that López begins having meetings with Dr. Matos and other SON administrators plotting how to get Dr. Alberti to resign. How do you know that this happened?

A. Well, my secretary communicated with other secretaries there and they were saying that Carmen López was meeting with Angélica Matos. She was not coming to Belaval to present herself to work. She would only go to give her class and that's it. And she was meeting with Angélica Matos.

Q. Were you present in these meetings?

A. No, I was not. I was not made aware of them at all.

Q. So you were not there, so how do you know then what was going on in those meetings?

A. Well, by the administrative harassment of what I believe that they were doing was that they were trying to create an administrative record or documentation claiming, I believe it untrue, but they're trying to claim basically that [sic] was an incompetent director and an incompetent professor and incompetent person so that they could justify then having me fired.

Q. But the fact is that you were not in those meetings?

A. I was not.

. . .

Q. So, this description of American community is a description that you're making; she just said "Palmas del Mar" or she said "Palmas del Mar, an American community"?

A. I added the fact, you know, she said "lives in Palmas del Mar", and then "is married to a doctor". That's what she said. The "American community is what I . . ."

Q. "American community" was an addition that you included?

A. Yeah, yeah.

Q. You didn't hear that comment coming from her?

A. No, no, no, no.

*See* Docket No. 164–18, Transcript of plaintiff Alberti's Deposition taken on June 18, 2010, pages 45, 46, 52.

In *Ayala–Sepúlveda v. Mun. of San Germán*, 671 F.3d 24, 30–31 (1st Cir.2012), Torruella, J., the plaintiff claimed that "the 'unlawful employment practice' here was the creation of a hostile work environment." The Court held:

> When determining whether a work environment is hostile, the court considers " 'all the circumstances,' included 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *National R.R. Passenger Corp. v. Morgan (AMTRAK)*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). None of these factors is individually determinative of the inquiry. *Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 73–74 (1st Cir.2011).
>
> Looking at "all the circumstances," we agree with the district court that the discriminatory acts alleged did not rise to the level of a hostile work environment. While Ayala [plaintiff] claims that he was ridiculed by his co-workers at OMME, he cites to no evidence regarding the severity or pervasiveness of the ridicule. . . .

In the instant case, the record shows that four (4) complaints were filed, and that all of them are devoid of any specific violation under Title VII for hostile work environment. The record, however, is full of hearsay references made by plaintiff Alberti during her testimony, such as, self-serving conclusory statements made by plaintiff, which are based on hearsay information attributed to Ms. Alberti through third parties. There is not one single discriminatory act that may be construed to infer that the claims reached the level of a hostile work environment. It appears that plaintiff Alberti reached to her own conclusions based on what third parties told her, hence, the plaintiff has failed to show to the Court that indeed the alleged discriminatory conduct based on national origin reached a level pervasive enough of a hostile work environment. It is just not in the record before the Court.

Furthermore, plaintiff Alberti accepted to work for the defendant in the year 2001 knowing that she subjectively perceived that "they didn't want me." *See* Docket No. 164–2, Transcript of plaintiff Alberti's Deposition taken on May 25, 2010, page 104. But Ms. Alberti never attempted to show that defendants' economic reasons constituted a sham. *See Infra* n.5. Notwithstanding, plaintiff Alberti returned to work for the defendant a second time around again with many subjective circumstances of the work environment, ignoring the valid business reasons provided to her.

The Court further notes that plaintiff Alberti holds a doctorate degree, hence, it is reasonable to conclude that she accepted her new employment contract after a careful negotiation and thorough reading of the contract. Thus, it is also reasonable to conclude that plaintiff must have understood perfectly that her employment was on a probationary status at the bare minimum for the five years required under the administrative rules and regulations of the University of Puerto Rico. *See* Section 46.4.5 of the Rules and Regulations of the

University of Puerto Rico, Docket No. 197–1, pages 9–10.[6] *See also* the *Amended Opinion and Order*, Docket No. 216, and the discussion on pages 14–31. Lastly, when an employee is classified under a probationary status, the Chancellor may terminate the probationary appointments at any time without granting tenure. *See* Section 46.6 of the Rules and Regulations of the University of Puerto Rico, Docket No. 197–1, page 10.[7] In the instant case, the record shows that plaintiff Alberti's probationary appointment was terminated on June 12, 2008, based on "unsatisfactory evaluation[s] during the probationary appointment period," and the recommendation by the Dean of the School of Nursing. *See* Letter of June 12, 2008 by Chancellor José R. Carlo–Izquierdo, MD, addressed to Dr. Rebeca Alberti, Docket No. 15–2, Docket No. 164–41, and the certified English translation at Docket No. 197–23.

Plaintiff has not been able to reach the threshold other than by hearsay statements, conjectures and/or conclusory statements to prove that plaintiff's first resignation was not motivated by the fact that the program that Ms. Alberti was assigned to work was terminated, as "the funds assigned by HRSA have been withdrawn," and the proposal was not approved by the corresponding academic forums of the University of Puerto Rico. *See Infra* n.5. Plaintiff also failed to meet the threshold on her termination on June 12, 2008 for "unsatisfactory [performance] evaluation during the probationary appointment period," [8] other than plaintiff's unsupported hearsay, conclusory and self-serving statements as to the alleged discrimination for national origin. There is not one single reference in the record, developed or undeveloped by plaintiff, as to the alleged Title VII violation for hostile work environment and/or that her termination was due to a sham or pretext. Plaintiff opted instead not to contest her termination in the year 2008, and proceeded to

**6.** Section 46.4.5 provides:

The administrative board, at the proposal of the Chancellor with the approval of the University Chancellor may grant tenure after a probationary period of less that five (5) years, or without the probationary period requirement, to distinguished professors that are recruited from recognized universities where they already have tenure. Likewise, it may grant tenure after a probationary period of less than five (5) years to: (1) persons with exceptional merits who have distinguished themselves in the practice of their profession; providing, however, that in these cases a probationary period of at least one (1) year will be required; and (2) institution personnel that has performed satisfactorily during, at least four (4) years of service in some of the teaching categories listed in Article 41, and serves in a satisfactory manner during at least one (1) year in a teaching category other than the one in which he or she seeks to get tenure.

**7.** Section 46.4 provides:

The Chancellor, or the President when the personnel is under his or her administrative jurisdiction, may terminate a probationary appointment without granting tenure when so justified, according to the evaluation or evaluations performed, notifying the affected person in writing.

**8.** *See* Docket No. 197–23, the Letter of June 12, 2008 sent by the Chancellor José R. Carlo–Izquierdo, MD, to plaintiff Alberti, "Re: Termination of Probationary Appointment." The Court further notes, that plaintiff Alberti was terminated in the year 2008, hence, she had not yet complied with the five-year probationary period. Moreover, the Rules and Regulations of the University of Puerto Rico are clear and unambiguous: (a) the fact that the employee has complied with the five-year probationary period does not translate into a property right to acquired a permanent status; and (b) while in the probationary period, the Chancellor "may terminate a probationary appointment without granting tenure when so justified, according to the evaluation or evaluations performed." *See* Section 46.6 cited above.

file the instant action on the grounds of discrimination for national origin, due process violation, amongst others.

In sum, plaintiff Alberti failed to show that the employer articulated reasons constituted a sham or a pretext to camouflage a possible discrimination. *See Dávila v. Corporación de Puerto Rico para la Difusión Pública,* 498 F.3d 9, 16 (1st Cir.2007), and *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990). In *Dávila,* the Court held that the burden is on the "plaintiff, who must show that the 'reason given by the employer for the discharge is pretextual....'" 498 F.3d at 16.

However, more importantly for reconsideration purposes is whether or not a plaintiff can raise a new argument at the reconsideration stage, when that argument could have been raised earlier in the proceedings. In *Dávila,* the Court held:

> This is an interesting argument [after the probationary period established by the employer, "the employee shall acquire all the rights of an employee"], but it comes as an afterthought. **The appellant did not present it to the district court. The argument is, therefore, forfeited.**[Fn.2.] *See United States v. Leahy,* 473 F.3d 401, 409–10 (1st Cir.2007). We review forfeited issues for plain error. *See id.* at 410. Plain error review is not appellant-friendly; we will resuscitate a forfeited argument only if the appellant demonstrates that "(1) an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Duarte,* 246 F.3d 56, 60 (1st Cir.2001). As we explain below, the appellant in this case cannot satisfy this exacting standard.

> Fn.2. The Station argues that the appellant waived this argument by not raising it before the district court. We do not agree. **A party waives a right only if he intentionally relinquishes or abandons it; he forfeits a right by failing to assert it in a timely manner.** *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Rodriguez,* 311 F.3d 435, 437 (1st Cir.2002). Because the argument in question was not identified in any form or fashion below, the appellant could not be said, on this record, to have intentionally abandoned it. (Emphasis ours).

498 F.3d at 14–15. *See also United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) (explaining that legal points alluded to in a perfunctory manner, but unaccompanied by developed argumentation, are deemed abandoned).

In the instant case, the Court finds that plaintiff had over three years to raise this new argument. Simply by using the words "harass" or "harassment" sparingly does not by itself translate into a violation of Title VII for hostile work environment. The Court does not have a developed or undeveloped argument of hostile work environment. Hence, the Court finds that plaintiff Alberti waived her right "by failing to assert it in a timely manner." *Dávila,* 498 F.3d at 14–15.

Based on the court record, the Court concludes that plaintiff's new argument of a Title VII violation for hostile work environment is late and unsupported by the record.

Plaintiff "cannot expect a trial court to do [her] homework for [her]." *McCoy v. Massachusetts Institute of Technology,* 950 F.2d 13, 22 (1st Cir.1991). "Rather, parties have an affirmative responsibility to put their best foot forward in an effort to present a legal theory that will support their claim." *McCoy,* 950 F.2d at 23.

 The Court reminds the parties that "[w]hile Title VII shields an employee who opposes conduct that may not actually

prove to be discriminatory, the employee must at the very least have a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.' " *Morales–Cruz,* 676 F.3d at 226, citing *Fantini v. Salem State College,* 557 F.3d 22, 32 (1st Cir.2009). Moreover, "Title VII is 'not intended to function as a panacea for every work-related experience that is in some respect unjust, unfair, or unpleasant.' " *Morales–Cruz,* 676 F.3d at 227, citing *Ahern v. Shinseki,* 629 F.3d 49, 59 (1st Cir.2010).

### C. *A Final Note.*

In the instant case, the record is clear as to the Court's availability to assist the parties at all times. However, it is not always possible to please a party, particularly when the law is not on the party's side. Lastly, all cases must come to an end. After three years of intense litigation and challenging advocacy by counsel, this case must come to an end. "Justice demands that cases must come to an end." *United States v. Walker,* 899 F.Supp. 14, 17 (D.Mass.1995).

### Conclusion

In view of the foregoing, *Plaintiff's Motion for Reconsideration under Rule 59(e),* Docket No. 217, is hereby denied, and *Plaintiff's Motion for Vacatur of Judgment and for Oral Argument,* Docket No. 225, is hereby denied.

IT IS SO ORDERED.