Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

---

No. 12-1982

DR. REBECCA ALBERTI,

Plaintiff, Appellant,

v.

DR. JOSÉ R. CARLO-IZQUIERDO; DR. SUANE E. SÁNCHEZ-COLÓN;
DR. GLORIA E. ORTIZ-BLANCO; DR. ANGÉLICA MATOS-RÍOS; CARMEN T.
LÓPEZ-RODRÍGUEZ; LEYRA FIGUEROA-HERNÁNDEZ; DR. MARÍA C.
DECLET-BRAÑA; IRIS RAMOS-VIERA; IRIS RIVERA-COLÓN;
JUDITH MIRANDA; VIRGINIA SANTIAGO; THE UNIVERSITY OF PUERTO RICO,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

---

Before
Torruella, Baldock,[*] and Thompson,
Circuit Judges.

---

Manuel R. Suárez-Jiménez, for appellant.
Diego Ramírez-Bigott, with whom Raquel M. Dulzaides and
Jiménez, Graffam & Lausell, were on brief for appellees.

---

December 18, 2013

---

[*]Of the Tenth Circuit, sitting by designation.

**Baldock, Circuit Judge**.  Dr. Rebecca Alberti held three positions at the University of Puerto Rico.  When the University discharged her from these positions, she sued the University and a number of university officials and students claiming violations of her rights under the United States Constitution and federal and local law.  Defendants moved for summary judgment.  The district court treated Defendants' motion as effectively unopposed because Alberti failed to comply with numerous court orders, as well as the local district court rules.  The court then granted Defendants' motion for summary judgment and later denied Alberti's motion for reconsideration in two separate published opinions.  Alberti v. Univ. of Puerto Rico, 818 F. Supp. 2d 452, 456–57 & n.1–2 (D.P.R. 2011) (Alberti I) reconsideration denied, 869 F. Supp. 2d 231 (D.P.R. 2012) (Alberti II).  Alberti now appeals, claiming the district court (1) abused its discretion in handling her numerous extension motions and deeming Defendants' summary judgment motion effectively unopposed and (2) erred in granting summary judgment to the Defendants on the merits on all claims.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Alberti first argues the district court abused its discretion by not granting her more time to file her opposition to Defendants' motion for summary judgment and by deeming Defendants' motion effectively unopposed.  She also attempts to add an extra

-2-

1400 pages to the record on appeal, claiming these are documents the district court should have considered below. Defendants oppose this attempt. Thus, before addressing Alberti's appeal on the merits, we must first determine (1) whether the district court properly handled Alberti's numerous motions for filing extensions, (2) whether the court properly found Defendants' motion for summary judgment effectively unopposed, and, (3) on a related note, which parts of the "joint appendix" we may properly consider in this appeal. As such, we first recount the relevant procedural history of this case.

Alberti filed her original complaint on April 25, 2008. At a settlement conference three years later, on May 3, 2011, the district court issued an order stating any dispositive motions in Alberti's case were due by June 1 and any oppositions were due by June 30, 2011. This order also scheduled trial for August 15–September 9, 2011. The court emphasized that "**NO** extensions of time" would be allowed to either side. (bold in original). Defendants complied with this order and filed, on June 1, their Motion for Summary Judgment, Statement of Uncontested Material Facts, and Memorandum in Support of their Motion. Alberti, on the other hand, did not comply with the district court's order, nor with the numerous extensions the court eventually gave her.

Rather than comply with the district court's initial order, Alberti filed a motion on June 29 seeking an extension until

July 5 to file her opposition. The court granted this extension. Alberti then filed a second motion on July 5 for extension until July 6 at 8:00 a.m. The court apparently did not rule on this request, but it made no difference as, on July 6, Alberti filed a third motion for extension until 6:00 p.m. on July 6. Alberti claimed in this motion that she was having "technical difficulties" uploading her "exhibits, memorandum of law and statement." Thus, she moved in the alternative for leave to file all of these documents in hard copy that same day, July 6, as a "plan B." The Court granted this motion in part, giving Alberti until 2:00 p.m. on July 6 to file her opposition with the court and until 5:00 p.m. to provide a copy of her opposition to defense counsel. Rather than comply with this second granted extension, Alberti moved for the district court to modify its order to give her until 5:00 p.m. to file her opposition with the court. The District court granted this motion in part, stating:

> Plaintiff is granted *a final extension of time*, that is, July 6, 2011 at 2:30 p.m. to file the opposition to defendants' motion for summary judgment. Plaintiff's counsel shall try to file the exhibits by 2:30 p.m. today, or may file the exhibits through a separate motion today. If counsel still has difficulty with the filing of the exhibits, he should contact the Help Desk . . . . *No further requests for extensions of time will be entertained by the Court.* IT IS SO ORDERED.

Alberti did not comply with this third extension. Instead, she filed only her Opposing Statement of Material Facts, and even that she did not file until 4:54 p.m.—two and a half hours

after her entire opposition was due.  Furthermore, at a status conference the next day, July 7, Alberti admitted her Opposing Statement of Material Facts was not properly filed because she failed to file with it more than 100 supporting exhibits.  In response, the court "made pellucidly clear to [Alberti's] counsel that a set of exhibits *only* is to be filed in hard copy, and shall be hand delivered to the defendants on July 8, 2011 by noon." (emphasis in original).  This status conference concluded at 7:40 p.m.  Alberti did not file these exhibits by noon the next day, and so the court issued an order taking notice of Alberti's failure and stating that "no further documents shall be filed by the parties . . . unless otherwise ordered by the court."  Despite the court's order, Alberti submitted hard copies of her exhibits, the vast majority of which were still in Spanish, two hours later, at around 4:45 p.m. on the evening of July 8.  Alberti eventually filed a Memorandum of Law in Opposition on July 20—*fourteen days* after it was due and in violation of the court's July 6 and July 8 orders. Alberti I, 818 F. Supp. 2d at 456–57 & n.1–2 (D.P.R. 2011).

When Defendants filed their motion for summary judgment, they also requested leave to file Spanish documents as exhibits and an extension until July 18 to file the certified translations of said documents, which the court granted.  On July 19, Defendants moved for a second extension until August 1 to file the certified English translations of its exhibits, which the court also granted.

Alberti, on the other hand, filed most of the exhibits accompanying her Opposing Statement in Spanish but never requested leave to do so. Furthermore, she did not request leave to file certified translations of these documents until July 27, four weeks after such a motion should have been filed, and three weeks after the court's final extension to her had expired. In this motion, she requested until August 29—two weeks after trial was scheduled to begin—to submit these translations. The District court denied this motion.

Before granting Defendants' motion for summary judgment on the merits, the district court explained that Alberti "force[d]" it to "consider as uncontested most of Defendants' Statement of Uncontested Material Facts" because (1) she disregarded numerous court orders and failed to file the exhibits supporting her Opposing Statement of Material Facts on time, (2) the majority of her exhibits were filed in Spanish without certified English translations, and (3) she repeatedly violated District Court Local Rule 56 by, for example, failing to include in her Opposing Statement particularized citations to the record and supporting evidence. Alberti I, 818 F. Supp. 2d at 456 n.1. The district court also pointed out that it would not consider Alberti's Memorandum of Law in Opposition because it was filed two weeks late and in violation of a court order. Id. at 457 n.2.

-6-

On appeal, Alberti argues (1) the district court either gave her another extension to file her exhibits at the July 7 status conference until the end of the day on July 8 but failed to put it in the minutes or, in the alternative, abused its discretion by giving her only until noon on July 8 to do so; (2) the district court abused its discretion when it did not grant Alberti leave to file English translations of her exhibits; and (3) the district court abused its discretion in deeming Defendants' motion for summary judgment effectively unopposed.

Because all of these claims are based on the district court's enforcement of its own scheduling orders, we review them for abuse of discretion. O'Connell v. Hyatt Hotels, 357 F.3d 152, 155 (1st Cir. 2004); see also Mendez v. Banco Popular de Puerto Rico, 900 F.2d 4, 7 (1st Cir. 1990) ("In the absence of a manifest abuse of discretion . . . we will not interfere with a district court's reasoned refusal to grant incremental enlargements of time."); Guzmán-Ruíz v. Hernández-Colón, 406 F.3d 31, 33 (1st Cir. 2005) (reviewing the district court's rejection of a party's belated request for abuse of discretion).  With this in mind, we turn now to Alberti's procedural arguments.

A.

Alberti first alleges that at the July 7 conference the district court in fact gave her until the end of the day on July 8 to submit the exhibits supporting her Opposing Statement.  Alberti

-7-

provides no evidence to support this claim. She did file a motion asking the court to amend its July 7 conference minutes, which the court never ruled on. But the minutes from the July 7 conference state the court "made pellucidly clear to [Alberti's] counsel" that her exhibits were due on July 8 by noon. Furthermore, the court restated it had only granted Alberti until midday on July 8 to submit these exhibits in its published opinion granting Defendants' motion for summary judgment. Alberti I, 818 F. Supp. 2d at 456 n.1. Alberti constantly disregards court deadlines. Indeed, she filed both her briefs in this appeal late—her reply brief *five months* tardy with no excuse. As such, we have little doubt Alberti simply failed to meet the noon deadline on July 8 and attempted to cover her tracks after the fact. Thus, we must determine whether the district court abused its discretion when it gave Alberti a *fourth and final extension* from about 8:00 p.m. until noon the next day to turn in hard copies of her exhibits.

In Mendez, we affirmed the district court's denial of a plaintiff's second and third requests for filing extensions. In affirming the district court we said:

> *Rules are rules-and the parties must play by them.* In the final analysis, the judicial process depends heavily on the judge's credibility. To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance.

Mendez, 900 F.2d at 7 (emphasis added).

-8-

Alberti claims the final deadline the district court set was unreasonable because it gave her effectively only four hours to produce hard copies of exhibits that totaled over a thousand pages. This claim, however, is belied by Alberti's third motion for extension. In this third request, Alberti asked for leave to file her opposition, including the exhibits, in hard copy on July 6 according to her proposed "plan B," in light of her claim that the court's electronic case filling program kept crashing. Based on this motion, the district court could reasonably have concluded Alberti was prepared to file hard copies of her exhibits on July 6. Thus the district court did not abuse its discretion when it granted Alberti until midday on July 8 to file the hard copies of exhibits which she had implied she was prepared to submit two days prior. In any event, the court's original due date for Alberti's opposition, giving her a month to respond to Defendants' motion for summary judgment, was reasonable. As in Mendez, Alberti should not be allowed to painlessly escape the foreseeable consequences of her noncompliance with this deadline and the four extensions the court ultimately granted her.

B.

Alberti next argues the court abused its discretion when it granted Defendants' July 19 motion requesting until August 1 to submit certified English translations of their exhibits but denied her July 27 motion requesting until August 29 to file English

-9-

translations of her exhibits (which we have already established she filed too late to begin with).[1]

Again, we direct Alberti to our language in Mendez: "rules are rules—and the parties must play by them . . . . [P]arties should not be allowed casually to flout . . . or painlessly to escape the foreseeable consequences of noncompliance." Mendez, 900 F.2d at 7. Here, Defendants timely filed their motion for summary judgment along with a timely motion seeking an extension to file translations of their exhibits. We acknowledge the court granted Defendants a second extension until August 1 to file their translations, even though this second motion for extension was filed one day late. This, however, does not entitle Alberti to the extension she requested where (1) she filed her exhibits late and in Spanish without any motion seeking leave to file translations,(2) she sought leave to file translations *four weeks* after her entire opposition was due and *three weeks* after the expiration of her fourth and final filing extension, and (3) she sought until two weeks *after* trial was scheduled to begin to submit these translations. As such, the district court by no means abused its discretion in denying Alberti's extremely tardy and practically

---

[1] The district court never officially struck Alberti's tardy submission of exhibits on July 8. As such, out of an abundance of caution, we explain why, even if the court accepted Alberti's tardy July 8 filing, it need not have granted her untimely motion to file translations of her Spanish exhibits.

absurd request for leave to file translations of exhibits which themselves were untimely filed.

C.

Alberti next contends the district court abused its discretion when it deemed Defendants' motion for summary judgment effectively unopposed. "We review a district court's finding that a party failed to timely oppose summary judgment for abuse of discretion. We will only find an abuse of discretion if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justified request for delay." Cortes-Rivera v. Dep't of Corr. & Rehab. of Com. of Puerto Rico, 626 F.3d 21, 25 (1st Cir. 2010) (internal citations omitted).

The court considered Defendants' motion for summary judgment unopposed due to a number of fatal flaws in Alberti's opposition. We have already recounted many of these flaws, including Alberti's repeated failures to comply with court orders and filing deadlines. Another reason the district court gave was the vast majority of the exhibits Alberti filed with her Opposing Statement of Material Facts were in Spanish. "[T]he law is clear that any submitted exhibit not directly translated into English or provided with a corresponding English translation may properly be disregarded by the district court." Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 27 (1st Cir. 2011). Thus, the district court did not abuse its discretion by not considering the exhibits

which Alberti filed in Spanish. And because Alberti filed the vast majority of her exhibits in Spanish, the district court did not abuse its discretion by considering as uncontested most of Defendants' Statement of Uncontested Material Facts.

The district court also cited Alberti's failure to comply with Puerto Rico Local District Court Rule 56, also known as an "anti-ferret" law. Local Rule 56 provides that, in the summary judgment context: "Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule." D.P.R. L.Cv.R. 56(c). Subsection (e) then provides in relevant part:

> An assertion of fact set forth in a statement of material facts *shall be followed by a citation to the specific page or paragraph of identified record material* supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

D.P.R. L.Cv.R. 56(e) (emphasis added).

Alberti argues she in fact complied with Local Rule 56 because she "did make specific references to the record for almost every statement she made to create a genuine issue of material fact." This is demonstrably and blatantly false. A large portion of Alberti's opposing statements leave obvious blanks where specific record citations should be, to the point of absurdity. For example, the citation clause for an assertion on page 11 of her

Opposing Statement reads: "See exhibit ___ compared to exhibit ___. See also contracts dated ___, identified herein as exhibits___, and Certification # 74 approved on ___, identified herein as exhibit ___." Further, even where Alberti provides record citations, rather than cite a "specific page or paragraph" as Rule 56(e) requires, she often cites generally to multiple exhibits which are themselves voluminous. For example, at one point she attempts to deny one of Defendants' specific statements of material fact by citing generally to two exhibits with a combined page count of 136 pages.

We need not belabor the point.

> Given the vital purpose that [Local Rules 56(c) and (e)] serve, litigants ignore them at their peril. In the event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated.

Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Given Alberti's egregious violations of Local Rule 56—indeed, the majority of her opposing statement clearly violated this rule—the district court did not abuse its discretion by deeming as uncontested most of Defendants' Statement of Uncontested Material Facts.

Alberti also argues she need not comply with Local Rule 56 because she filed her exhibits in hard copy. Therefore, she argues, she need only comply with Local Rule 7, which requires that one properly organize and tab exhibits filed in hard copy. She

cites no authority for this argument, and for good reason, as it is ridiculous. Of course, when one files exhibits in hard copy, the hard copies must be properly organized. But filing exhibits in hard copy also makes citing them precisely under Local Rule 56 that much more essential. Indeed, Alberti's actions—filing an Opposing Statement of Material Fact with imprecise citations or no citations at all along with a voluminous hard-copy compilation of exhibits—strike us as the epitome of playing "a game of cat-and-mouse," and "leav[ing] the district court to grope unaided for factual needles in a documentary haystack." Caban Hernandez, 486 F.3d at 7–8.

Alberti also repeatedly argues the district court improperly considered as uncontested *most* of Defendants' Statement of Uncontested Material Facts. She argues first that this implied some of the facts were contested and, and as such, summary judgment was improper. Although the district court's phrasing may not have been ideal, Alberti misunderstands her burden in opposing summary judgment. Once Defendants advanced a statement of uncontested facts, Alberti had to point to specific facts that created a genuine issue of *material* fact.

> Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" . . . . In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.

McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). To the extent the court considered Alberti's Opposing Statement, it also noted that she did not provide "specific facts sufficient to defeat the 'swing of the summary judgment scythe.'" Alberti I, 818 F. Supp. 2d at 457 n.2 (quoting Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005)). The district court noted that, to the extent Alberti properly contested Defendants' Statement of Facts, the facts contested were not material. Summary judgment is proper in these circumstances. See Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

Alberti then argues—quite ironically, given the utter lack of precision in her court filings—that the court's failure to explain which specific parts of Defendants' Statement of Uncontested Material Facts it deemed uncontested prejudiced her case on appeal. Although we frown upon a district court's failure to state specifically which parts of a plaintiff's Opposing Statement it considered and which parts it did not, Sánchez-Figueroa v. Banco Popular de Puerto Rico, 527 F.3d 209, 214 n.8 (1st Cir. 2008), this error does not warrant reversal or remand. Indeed, in Sánchez-Figueroa, the district court deemed uncontested the defendant's statement of material facts based on flaws in the plaintiff's opposing statement that were nearly identical to the flaws in Alberti's Opposing Statement. Yet the court nevertheless considered part of the plaintiff's opposing

-15-

statement of material facts. On appeal, we affirmed the decision to treat the defendant's statement as uncontested and simply excluded all of the plaintiff's opposing statement from our consideration, treating the district court's inconsistent consideration as troublesome, but harmless in that case. Id. at 214 & n.8. Because, as in Sánchez-Figueroa, we affirm the district court's decision to deem Defendants' Statement of Facts uncontested, we likewise remedy the district court's inconsistency by excluding Alberti's Opposing Statement in its entirety from our analysis.

We see nothing in the record that suggests an "unreasoning and arbitrary insistence upon expeditiousness" by the district court. Cf. Cortes-Rivera, 626 F.3d at 25. Rather, it appears the district court understandably lost patience with Alberti's constant disregard for its orders as well as her late and unorganized filings. In light of all of the flaws in Alberti's Opposing Statement, combined with the fact that she filed her Memorandum of Law in Opposition at least three weeks late and in violation of the court's orders, we cannot say that the district court abused its discretion when it deemed Defendants' motion for summary judgment effectively unopposed and we review it as such.

D.

Alberti now attempts to show factual issues in her brief on appeal by citing to the first 1400 pages (1-1399) of the nearly

4000-page "joint appendix." Alberti's initial presentation of these pages was incredibly disingenuous. In her opening brief, she asserted these pages were the hard copies of the exhibits she filed with the district court on July 8 which it should have considered in ruling on Defendants' motion for summary judgment. Defendants, however, notified us they had not consented to the inclusion of these pages in the "joint appendix" and these pages were not in fact part of the district court record. Rather, Defendants pointed out, these documents were the translations of Alberti's Spanish exhibits and, while she filed her Spanish exhibits two hours after the court's final extension to her had expired, she did not file these translations with the district court until November 23, 2011.[2] In other words, she submitted these translations nearly (1) five months after her Opposition was due in full, (2) three months after the deadline she had requested to submit translations, and (3) two months *after* the district court had already entered judgment against her. When confronted with this information, Alberti changed her tune. She now argues instead that (1) the parties agreed these pages would be part of the joint appendix, and (2) these translations are properly part of the record because she did not file them as part of her opposition but rather as part of her motion for reconsideration.

_____

[2] Although Alberti did file the first part of her translations on November 2, 2011, she did not finish submitting translations until November 23.

-17-

We have already concluded the district court properly rejected Alberti's tardy filings, thus we need say no more in response to the argument in Alberti's opening brief that she timely and properly filed these documents.  As to Alberti's argument that Defendants consented to include these pages, we need not consider the e-mails with defense counsel that Alberti attaches as an appendix to her reply brief because she filed this brief five months after it was due and with no excuse.  Fed. R.App. P. 31(a); see also Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 60 n.2 (1st Cir. 2003).  Even were we to consider these e-mails, however, they are ambiguous at best, proving only that Alberti dumped on defense counsel a massive amount of files and docket entries which she wished to include in the appendix.  These e-mails do not show defense counsel consented to adding 1400 pages to the record that should not be there.  Furthermore, Alberti acknowledged at oral argument that she simply dropped all of these documents off in two boxes at defense counsel's office without explaining the contents, and then e-mailed defense counsel stating those would be the pages included in the "joint appendix."  This strikes us as yet another attempt by Alberti to subvert the rules of the court and to perpetuate the game of cat-and-mouse she began in the district court, and we will have none of it.

Finally, we reject Alberti's argument that these documents are properly part of the record as part of her motion for reconsideration. "A motion for reconsideration 'does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 15–16 (1st Cir. 2006) (quoting Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir.2005)). Yet this is precisely what Alberti attempted to do before the district court and now attempts before us. As such, we will not consider pages 1–1399 of the joint appendix except where it is abundantly clear the page referenced was filed with the district court on time and in English and was therefore properly a part of the district court record.

## II.

Above we addressed Alberti's procedural challenges and established which parts of the joint appendix are properly part of the record before us—that is, pages 1400 on. We now address Alberti's merit-based claims. We begin by reciting the facts relevant to the merits of Alberti's appeal.

Alberti is a family nurse practitioner with a nursing doctorate. She was born in the United States but considers herself Puerto Rican-American and is fluent in Spanish. Alberti worked for

-19-

the University of Puerto Rico on two separate occasions.  Both times her job included developing a family nurse practitioner ("FNP") program at the University's School of Nursing and acquiring funding for that program.  Her first stint at the University began in 2001 and continued until she resigned in December 2002.  She resigned because, although she had procured a $1 million federal grant for the FNP program, the University failed to approve the FNP program and these funds had to be returned.  Alberti began working for the University's School of Nursing for the second time in August 2005. Initially she worked for the University under a temporary contract.  By the middle of 2006, however, the FNP program had been approved, Alberti had again procured a federal grant to fund the FNP program, and the University had appointed her to three positions: 1) director of the School of Nursing's FNP program, 2) grant director, and 3) a tenure-track associate professor.

While working at the University, Alberti's relationships with some of her students and colleagues were apparently quite contentious.  Alberti claims many of her students did not like her because her teaching style was too "Americana."  Much of the tension stemmed from an ongoing conflict between Alberti and one of her nursing students, Defendant Iris Ramos-Viera.  For example, when Ramos failed one of Alberti's courses because she did not accumulate sufficient clinical hours, she attempted to make up

these hours independently and without Alberti's knowledge and, according to Alberti, violated the Health Insurance Portability and Accountability Act (HIPAA) in doing so. On December 4, 2007, Alberti "bypassed the chain of command," to use her words, and wrote to Defendant Dr. José Carlo-Izquierdo, the Chancellor and nominating authority of the University's Medical Science Campus. Alberti complained in this letter about Ramos's alleged HIPAA violations and that Defendants Dr. Angélica Matos-Ríos and Leyra Figueroa-Hernández, fellow faculty members, and Dr. Suane Sánchez-Colón, the Dean of the School of Nursing, were interfering with Alberti's work as director of the FNP program. Later, Alberti refused to approve Ramos's proposed research project, which was part of her required course work.

On February 4, 2008, Defendant Sánchez wrote to Defendant Carlo and, citing a lack of trust and Alberti's letter bypassing the chain of command, recommended Carlo terminate Alberti's director positions. Carlo concluded that, under the University Rules and Regulations, Alberti's director positions were positions of trust. Further, based on the combination of Alberti's direct complaint to him and Sánchez's request for Alberti's termination, Carlo concluded the relationship between the two had deteriorated to the point of being "non-functional." On February 13, 2008, Carlo removed Alberti from her two director positions. He informed

her of her removal in writing, but did not provide her with a pre-termination hearing.

Alberti's relationships with some of her students and the University faculty became even more strained after she was removed from her director positions. She initiated the present suit against the University Defendants on April 25, 2008. On June 3, 2008, Defendant Sánchez wrote to Carlo requesting he terminate Alberti's tenure-track associate professor position. Sánchez's letter included a number of evaluations drafted between February 14 and June 3, 2008, by other School of Nursing faculty members—namely, Defendants Figueroa and Matos and Defendants Virginia Santiago, Carmen T. López-Rodríguez, and Dr. Gloria E. Ortiz-Blanco—that supported terminating Alberti. On June 12, 2008, citing Sánchez's June 3 letter, Carlo notified Alberti that her tenure-track associate professor position would terminate as of August 15, 2008. Alberti was not given a pre-termination hearing before receiving this letter.

On appeal, Alberti argues the district court erred when it (1) concluded her director positions were positions of trust that Carlo could terminate at will; (2) found she did not have a protected property right in her tenure-track associate professor position under the Due Process Clause and therefore had no right to a pre-termination hearing; (3) concluded her letter to Carlo was

not protected under the First Amendment; and (4) dismissed her Title VII National Origin Discrimination Claim.[3]

We review a district court's grant of summary judgment de novo, "taking the facts in the light most favorable to the nonmovant." Lloyd's of London v. Pagán-Sánchez, 539 F.3d 19, 21 (1st Cir. 2008). Summary judgment is only appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Furthermore, even where a motion for summary judgment is unopposed, we are still bound to review the case on the merits based on the uncontroverted facts before us. Cordi-Allen v. Halloran, 470 F.3d 25, 28 (1st Cir. 2006). We are not bound to do a party's work, however, nor to develop legal arguments merely mentioned in passing. Int'l Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 398 n.14 (1986) ("it is not our task sua sponte to search the record for evidence to support" a party's claims); Colón-Fontánez, 660 F.3d at 45-46 ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work,

---

[3] Alberti also sued Dr. Maria C. Declet-Brana, a fellow teacher, and University students Iris Rivera-Colon and Judith Miranda. She fails to explain to us her claims against these defendants, however. Rather, in her fact section, citing to the first 1400 pages of the joint appendix, which we have already excluded, Alberti accuses Declet of "bullying" her, and calls Rivera and Miranda "Agents Provocateurs," apparently because they had complained about her teaching style, calling it "too American" and calling her "gringa."

-23-

create the ossature for the argument, and put flesh on its bones.")
(internal citations omitted).

A.

Alberti first argues she had a protected property interest in her director positions at the School of Nursing. Under the Fourteenth Amendment, a state cannot discharge a public employee without due process of law if the employee possesses a property right to continued employment in the position at issue. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). But "[p]roperty interests are not created by the Constitution, [rather,] 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" Id. (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). A property interest in continued employment may derive from a statute, a contract provision, or an officially sanctioned workplace rule. Perry v. Sindermann, 408 U.S. 593, 601–02 (1972).

Alberti devotes her briefing on the issue solely to arguing her director positions do not fall within the definition of a "position of trust," which, under Section 30.1.8 of the University's Rules and Regulations, may be "removed at will." She argues a fact issue exists because the position of "Program Director" was not added to the list of positions of trust in Article 71 of the University Rules and Regulations until after she

was appointed to these positions. But even before Alberti's appointment, Section 71.3.2 of the Rules listed "[p]ositions directing organizational units" as positions of trust, and Alberti conceded at oral argument that, as a program director, she directed organizational units at the University. Thus, Alberti's argument on this point fails and she is unable to demonstrate she had a property interest in her director positions.

B.

Alberti next contends the district court erroneously found she did not have a property interest in her tenure-track associate professor position, which had no expiration date. Defendant Carlo terminated Alberti's associate professor position in writing and without a pre-termination hearing. The termination letter cites Section 46.6 of the University Rules and Regulations, the evaluations collected by Defendant Sánchez, as well as evaluations written by Defendants Santiago, Lopez, Matos, and Ortiz. These evaluations were overwhelmingly negative.

Section 30.1.2 of the University Rules and Regulations defines "Probationary Appointment" as:

> the appointment granted initially to cover a regular post or position approved in the budget, and shall have a fixed duration according to the provisions of the Regulations. During the appointment period the incumbent shall be on probation, subject to an evaluation to determine whether or not at the end of said period he or she merits retention with a permanent appointment.

Section 46.2 provides, with very limited exceptions, that a professor may not attain tenure in her position until she renders five years of satisfactory service while on probation. Section 46.6, on the other hand, provides: "The Chancellor . . . may terminate a probationary appointment without granting tenure *when so justified*, according to the evaluation or evaluations performed, notifying the affected person in writing." (emphasis added).

Alberti brings two coherent arguments for why the University Rules and Regulations gave her a property interest in continued employment as an associate professor. First, she argues "when so justified" in Section 46.6 is tantamount to a "for cause" requirement. Second, she argues her termination must be justified by mandatory evaluations and that, under Section 29.8, she had a pre-termination right to discuss these evaluations with her evaluators. However, because she raises this second argument for the first time on appeal, we will not consider it. McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal.").

Although the issue is far from clear, we acknowledge Alberti's argument equating "when so justified" with "for cause," may have some merit. A public employee who is dismissible only "for cause" is entitled to a very limited pre-termination hearing. Gilbert v. Homar, 520 U.S. 924, 929 (1997). Furthermore, Alberti's

-26-

case is indeed distinguishable from <u>Lovelace</u> v. <u>Se. Mass. Univ.</u>, 793 F.2d 419 (1st Cir. 1986), on which both the district court and the University rely. In <u>Lovelace</u>, the teaching contract for a non-tenured professor was not renewed and we held the professor did not have a cognizable property interest in reappointment. In so holding, we rejected the professor's argument that he had a property interest in reappointment simply because the university's rules required "justification" in order to not renew his contract. <u>Id.</u> at 421.

Unlike in <u>Lovelace</u>, however, the University here did not deny Alberti reappointment after her contract expired. Rather, the University terminated her from a position she still occupied. Section 30.1.2 of the University Rules states a probationary appointment "shall have a fixed duration;" however, Alberti's probationary appointment was for an "indefinite" period. As such, it appears the only "fixed duration" the University could reference is the five years of probationary employment required before either attaining tenure or being dismissed without attaining tenure in Section 46.6. Thus, one could plausibly read the University Rules and Regulations in Alberti's case as giving her a property interest in at least a five-year term of probationary employment. The district court found this interpretation untenable because it "would allow a professor to violate the norms of the institution for five (5) years while under probation, and the institution would

-27-

be powerless to act within the probationary period." Alberti I, 818 F. Supp. 2d at 467. But this goes too far. Even assuming Alberti had a property interest in a five-year term of employment at the University, the University would not be powerless to act within that probationary period. Rather, it would simply have to give her "a very limited hearing prior to [her] termination, to be followed by a more comprehensive post-termination hearing" to comply with due process. See Gilbert, 520 U.S. at 929.

That being said, notwithstanding the plausibility of this argument, we need not decide whether Alberti in fact had a property interest in her probationary professorship because the Individual University Defendants are entitled to qualified immunity on this issue. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011).[4] We have discretion as to which of the two prongs to tackle first in this analysis. Id.

_____

    [4] We treat the University of Puerto Rico as an arm of the state for Eleventh Amendment purposes, see Irizarry-Mora v. Univ. of Puerto Rico, 647 F.3d 9, 11–17 (1st Cir. 2011), and University of Puerto Rico officials as state actors for qualified immunity purposes, see Meléndez-García v. Sànchez, 629 F.3d 25, 35-36 (1st Cir. 2010).

We choose to address the "clearly established" prong first, as this is where Alberti's claim clearly fails. We have repeatedly stated:

> "identifying some abstract constitutional right extant at the time of the alleged violation does not itself show that the conduct alleged is a violation of 'clearly established' law. Instead, the focus must be upon the particular conduct engaged in by (or attributed to) the defendants; immunity is forfeited only if a reasonable official would clearly understand *that conduct* to be a violation of the Constitution.

Rivera-Ramos v. Roman, 156 F.3d 276, 279-80 (1st Cir. 1998) (emphasis in original).

The only legitimate source Alberti cites to argue the University Defendants' particular conduct violated clearly established law is the University Rules and Regulations. But these rules, as discussed above, are unclear when applied to Alberti's case. Although one could reasonably read the rules as creating an expectation of continued employment for at least five years, one could also reasonably interpret Rule 46.6 as allowing the termination of Alberti's indefinite probationary contract without a pre-termination hearing whenever the evaluations on file justified such action. Alberti does not cite any law to the contrary and our independent research has revealed none. As such, Alberti did not have a "clearly established" right to a pre-termination hearing prior to being dismissed from her probationary professor position. Thus, the district court properly found the

University Defendants were entitled to qualified immunity on this claim.[5]

## C.

Alberti's First Amendment argument concerns her letter to Defendant Carlo complaining about Defendant Ramos's alleged HIPAA violation and the actions of Defendant Sánchez and other faculty members in the FNP program. She argues the district court erred when it relied on Garcetti v. Ceballos, 547 U.S. 410 (2006), instead of using the legal framework from Decotiis v. Whittemore, 635 F.3d 22 (1st Cir. 2011), to dismiss her First Amendment claim. Furthermore, Alberti argues, to the extent her letter is not protected under a traditional First Amendment analysis, it is protected under the concept of "academic freedom." These arguments fail to create a genuine issue of material fact.[6]

---

[5] Qualified immunity would *not* bar granting Alberti injunctive relief. Alberti, however, seeks injunctive relief only against the University itself; and she specifically excluded the University from her due process claim in her third amended complaint. Dist. Doc. # 123 at ¶ 121. We are not inclined to remedy her counsel's tactical errors. Because Alberti does not seek injunctive relief against anyone based on this claim, we need not decide whether she is entitled to such relief.

[6] Alberti also argues she filed the instant suit before a number of the evaluations that led to her termination were filed, and that filing the instant suit should therefore be protected under the First Amendment. She makes this argument in one brief paragraph with no citations or further explanation. Accordingly, we do not address it. Colón-Fontánez, 660 F.3d at 45–46.

As to Alberti's first argument, Supreme Court precedent controls over our precedent and, under both <u>Garcetti</u> and <u>Decotiis</u>,"public employees do not speak as citizens when they 'make statements pursuant to their official duties,' and . . . accordingly, such speech is not protected by the First Amendment." <u>Decotiis</u>, 635 F.3d at 30 (quoting <u>Garcetti</u>, 547 U.S. at 422). Alberti attempts to argue that, by bypassing the chain of command with her grievances, she was not speaking as an employee on a matter related to her employment, but as a private citizen on a matter of public concern. It is clear, however, that the complaints Alberti relayed to the Chancellor were made in her supervisory capacity over Defendant Ramos, as her teacher, and in her capacity as FNP program director, concerning the administration of the FNP program. Accordingly, because Alberti made these complaints pursuant to her official duties as a teacher and as the FNP director, not as a private citizen, they are not protected under the First Amendment. <u>Id.</u>

In her reply brief, Alberti points us to a recent case, <u>Dahlia</u> v. <u>Rodriguez</u>, 10-55978, ___ F.3d ___, 2013 WL 4437594 (9th Cir. Aug. 21, 2013) (en banc), where the Ninth Circuit reversed prior precedent and held the court must make a "practical inquiry" when determining whether the speech is within the scope of the employee's duties and thus not protected by the First Amendment. But a *practical inquiry* shows Alberti signed the letter as FNP

director, and it pertained to issues regarding the administration of the FNP program. Furthermore, "while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize employee grievances." Garcetti, 547 U.S. at 420. Yet this appears to be exactly what Alberti is trying to do. Thus, this argument fails.

Alberti's "academic freedom" argument also fails. Alberti cites Hardy v. Jefferson Cmty. Coll., 260 F.3d 671, 679 (6th Cir. 2001), for this argument, but even Hardy makes clear that academic freedom protects only speech in the context of classroom teaching that communicates "an idea transcending personal interest or opinion which impacts our social and/or political lives." Id. (internal citations omitted). This protection is far removed from a teacher's administrative complaints that concern a program she is directing and that "bypass the chain of command." Furthermore, to the extent Alberti argues Defendants retaliated against her for her grading decisions and thereby violated her right to academic freedom, we already rejected this specific argument in Lovelace. 793 F.2d at 426 ("To accept plaintiff's contention that an untenured teacher's grading policy is constitutionally protected and insulates him from discharge when his standards conflict with those of the university would be to constrict the university in defining and performing its educational mission. The first

-32-

amendment does not require that each non-tenured professor be made a sovereign unto himself.").

### D.

Finally, we address Alberti's Title VII claim. The district court found Alberti met the initial burden of showing a prima facie case of unlawful discrimination based on national origin. <u>Alberti I</u>, 818 F. Supp. 2d at 477. The court also found, however, that Defendants articulated legitimate non-discriminatory reasons for the adverse employment actions at issue and that Alberti could not then establish that these reasons were merely pretextual and that the true reason behind the adverse action was her national origin. <u>Id.</u>

Under the <u>McDonnell Douglas</u> framework for handling Title VII claims, if the plaintiff establishes a prima facie case of discrimination, "the burden of production shifts to the defendant to produce evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." <u>Pearson</u> v. <u>Mass. Bay Transp. Auth.</u>, 723 F.3d 36, 40 (1st Cir. 2013) (Souter, J.) (internal quotations omitted). "If the defendant produces such evidence, the <u>McDonnell Douglas</u> framework disappears and the sole remaining issue is discrimination *vel non*." <u>Id.</u> (internal quotations and alterations omitted). Although the burden of production may shift, "[t]he burden of persuasion remains at all times with the plaintiff." <u>Mariani-Colón</u> v. <u>Homeland Sec. ex rel.</u>

-33-

Chertoff, 511 F.3d 216, 221 (1st Cir. 2007). That is, "the plaintiff must prove not only that the reason articulated by the employer was a sham, *but also that its true reason was plaintiff's race or national origin*." Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999) (emphasis added).

Even assuming Alberti made out a prima facie case of unlawful discrimination, we agree Defendants established legitimate non-discriminatory reasons for Alberti's termination, including, among other things, her failure to attend faculty meetings, her failure to comply with her administrative duties, and her failure follow the proper channels of communication within the School of Nursing. And even if we agreed with Alberti that these reasons were in fact a sham, she does not argue on appeal, or advance any evidence to show, the true reason for her termination was her race or national origin. We will not make the argument nor scour the record for evidence to support it for her. Davis, 476 U.S. at 398 n.14; Colón-Fontánez, 660 F.3d at 45-46. Thus, on the record and argument before us, the district court properly granted summary judgment to Defendants on this claim.[7]

---

[7] Alberti brings two other coherent-but-meritless claims. First, she argues the district court erred when it found the University Defendants were entitled to qualified immunity. As we stated above, the University Defendants are indeed entitled to qualified immunity from Alberti's due process claim. Furthermore, because we affirm the rest of the issues presented on the merits, we need not address whether Defendants are entitled to qualified immunity on those issues. Alberti also argues she has a right to a name-clearing hearing. She did not raise this issue or seek this

Accordingly, the judgment for the district court is AFFIRMED.

---

relief before the district court, so we will not address it now. McCoy, 950 F.2d at 22.