# United States Court of Appeals
## For the First Circuit

No. 18-1852

HECTOR ZABALA-DE JESUS, <u>et al.</u>,

Plaintiff, Appellant,

v.

SANOFI-AVENTIS PUERTO RICO, INC., <u>et al.</u>,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, <u>U.S. Magistrate Judge</u>]

Before

Thompson, Lipez, Barron,
<u>Circuit Judges</u>.

<u>Irma R. Valldejuli</u>, with whom <u>Antonio Moreda-Toledo</u> and <u>Moreda & Moreda, P.S.C.</u> were on brief, for appellant.
<u>Anita Montaner-Sevillano</u>, with whom <u>Reinaldo L. Figueroa-Matos</u> and <u>McConnell Valdés LLC</u> were on brief, for appellee.

May 13, 2020

**BARRON**, **Circuit Judge**.      Hector Zabala-De Jesus ("Zabala") appeals from the District Court's 2018 grant of summary judgment for Sanofi Aventis Puerto Rico, Inc. and Sanofi U.S. Services, Inc. on Zabala's claim under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.[1]  We affirm.

## I.

We begin by reviewing the developments that led to Zabala's suit.  In doing so, we set forth only those facts that the parties do not dispute on appeal, as those facts set the stage for our consideration of the merits of Zabala's challenge to the District Court's summary judgment ruling.

Sanofi Aventis Puerto Rico, which, for the sake of convenience, we will refer to as "Sanofi Puerto Rico" in what follows, is the Puerto Rico subsidiary of Sanofi, which is a life sciences company that manufactures and markets pharmaceutical products and medical devices.  Sanofi Puerto Rico hired Zabala in 1997, when he was thirty-nine years old, to be a Product Manager in its San Juan, Puerto Rico, office.  In that role, Zabala was responsible primarily for the company's cardiovascular products.

Over time, Zabala moved to other positions within Sanofi Puerto Rico, which gave him responsibilities over other products.

---

[1] The complaint references other parties but does not make specific allegations against them and they are not mentioned in the briefs or the District Court opinion.  Thus, we do not discuss them further.

For example, in 2000, Zabala became a Marketing Manager, which brought the company's urology products in his purview. Then, in 2003, he was promoted to Senior Marketing Manager, from which position he managed three cardiovascular pharmaceuticals, Plavix, Avapro, and Avalide, that, collectively, accounted for 70 percent of Sanofi Puerto Rico's sales.

In 2012, however, these three products lost their patent protection, and Sanofi Puerto Rico reorganized its marketing department. Soon thereafter, Zabala was reassigned to be the Senior Marketing Manager of the Specialty Business Unit. Waleska Rodriguez, the unit's director, became his new supervisor.

Zabala was responsible in this new role for a broad array of Sanofi Puerto Rico's medical products and devices, including oncology, renal, hematology, and bio-surgery products. Sanofi Puerto Rico devoted over 18 percent of its 2012 marketing budget to these products and devices.

After Sanofi Puerto Rico's major cardiovascular products lost their patent protection, most of its sales revenue for the period running from 2012 to 2013 came from its diabetes products. In fact, by August of 2013, Sanofi Puerto Rico's diabetes production portfolio represented almost 80 percent of the company's total sales revenue. During this period, moreover, the Diabetes Business Unit had the largest marketing budget and the

most sales representatives of any unit. Angela Febles served as the unit's director during that time.

In 2013, following the growth in sales revenue from Sanofi's diabetes products, David Freeman, Sanofi Puerto Rico's General Manager and Vice President, was tasked with determining how to consolidate the Specialty and Diabetes Business Units. Freeman assessed the operations of each of the units, met with the respective unit supervisors, Rodriguez and Febles, and conducted a business review of each unit. The assessment revealed that for the year 2014, the Specialty Business Unit was expected to have a marketing budget of $430,000 and sales revenue of $16 million, while the Diabetes Unit was expected to have a marketing budget of $5 million and sales revenue of $56 million.

Following this assessment, Freeman wrote a proposal, entitled "Sanofi Puerto Rico Organizational Assessment and Recommendation," which he presented in November 2013 to his supervisor, Dennis Urbaniak, and Adriana Bury, a human resources officer specifically responsible for Sanofi Puerto Rico. Freeman's proposal recommended consolidating and combining the Specialty Business Unit and Diabetes Business Unit into one new unit. Accordingly, Freeman recommended that the responsibilities of the Specialty Business Unit Director and Diabetes Business Unit Director be consolidated into one position and that the

responsibilities of each unit's Senior Marketing Manager position be consolidated into one position as well.

This proposed consolidation, if effected, would have meant that Sanofi Puerto Rico would have needed to retain only either Febles or Rodriguez to fill the consolidated Director position, and only either Zabala or Brenda Bonet, who had joined Sanofi in 2007 as the Marketing Manager for Sanofi Puerto Rico's Diabetes Business Unit, to fill the consolidated Senior Marketing Manager position. When Freeman presented his proposal to Urbaniak and Bury, he included his recommendation that Sanofi Puerto Rico retain Bonet as the Marketing Manager of the new unit and Febles as the unit's Director, thereby bypassing Zabala for the post and leaving him without a job in the company. Finally, Freeman proposed the creation of two new positions, a Business Intelligence Manager who would be focused on market-trend analysis and recommendations, and a Product Manager, who would be focused on diabetes products.[2]

In November of 2013, Bury asked to meet with Freeman to talk about his proposal to consolidate the positions. Bury told Freeman that the plan to reduce the workforce and eliminate

_____

[2] The Product Manager role was meant to serve as a support for the newly consolidated Senior Marketing Position. Febles and Bonet had recommended that Freeman create the Product Manager position in order to support the launch of new diabetes products.

positions would need to be cleared by Sanofi Puerto Rico and Sanofi U.S. Services' internal legal team.

With respect to staffing, Bury and Freeman agreed that the main criteria for the two new, consolidated roles would be diabetes-market expertise and past performance in recent years. Bury then explained that she supported Freeman's recommendation of Febles for the new, consolidated Director role based on both Febles's superior qualifications according to the agreed-upon criteria and her seniority. Bury explained that Febles's seniority would ensure that her selection would reduce legal risks under Puerto Rico severance law. But, Bury told Freeman she would not sign on to his recommendation to select Bonet rather than Zabala for the new Business Unit Marketing Manager position until she had personally reviewed Bonet and Zabala's qualifications, and, in particular, their work experience and performance ratings.

To facilitate this review, Freeman asked Febles to write up a comparison of Zabala's and Bonet's backgrounds and experience. The resulting comparison, though very detailed, was favorable only to Bonet, and it was occasionally incorrect and underinclusive in discussing Zabala. Febles's comparison included a note that Bonet was a woman over forty years old. It did not include Zabala's gender or age. Febles told Freeman that she was missing information on Zabala, but Freeman told her that Human Resources could fill in the rest. Freeman then added some more information

about both Zabala and Bonet, including that Bonet had "[e]xtensive Diabetes expertise," that Zabala was an "[e]xperienced marketing manager with 17 years working for Sanofi," and that Zabala was a male over fifty years old.

In the comparison, Freeman also noted the candidates' performance ratings over time. Throughout their tenure at Sanofi Puerto Rico, Bonet and Zabala had been evaluated during Sanofi Puerto Rico's biannual employee performance evaluations, which included overall score summaries based on a one-to-nine scale, with nine being the highest score an employee could receive.

In 2010, Zabala received an overall performance evaluation of seven, which was lowered to a five in 2011, and to a one in 2012. In 2013, Zabala's overall evaluation score in his mid-year review before he was fired was a four.

Bonet's recent scores trended in the opposite direction. In 2010, Bonet received an overall performance rating of a four, which went up to an eight in 2011 and 2012. And, in 2013, Bonet earned a five in her mid-year review.

Along with the performance ratings, Freeman sent the rest of the updated comparison to Bury. Bury then reviewed the two candidates and agreed with Freeman that the new, consolidated position should go to Bonet and that Zabala should be let go. At the time, Zabala was fifty-five years old and Bonet was forty-four years old.

After being let go from Sanofi, Zabala brought an age discrimination claim against Sanofi Puerto Rico and Sanofi U.S. Services in the United States District Court for the District of Puerto Rico under the ADEA, 29 U.S.C. § 621, and a claim for age discrimination under Puerto Rico law pursuant to P.R. Law No. 100 of June 30, 1959, P.R. Laws Ann. Tit. 29, § 146, and Article 1802 of the P.R. Civil Code, P.R. Laws Ann. Tit. 31, § 5141. The District Court granted the defendants' motion to dismiss the Puerto Rico law claims on March 13, 2017. The defendants then moved for summary judgment on the ADEA claim, which the District Court granted on July 30, 2018, and from which grant Zabala now appeals.

## II.

Our review of the grant of summary judgment to the defendants is de novo. See Conjugal P'ship Acevedo-Príncipe v. United States, 768 F.3d 51, 54 (1st Cir. 2014). Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party -- here, Zabala -- "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the moving party is entitled to a judgment as a matter of law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (quoting Federal Rule of Civil Procedure 56(c)).

In considering a motion for summary judgment, "we must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation." Abbott v. Bragdon, 107 F.3d

- 8 -

934, 938 (1st Cir. 1997), vacated on other grounds, 524 U.S. 624 (1998). "We may affirm a grant of summary judgment 'on any ground revealed by the record.'" Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (quoting Santangelo v. N.Y. Life Ins. Co., 785 F.3d 65, 68 (1st Cir. 2015)).

### III.

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's prohibition is "limited to individuals who are at least 40 years of age." Id. § 631(a).

The employee who brings the ADEA claim bears the burden of proving that the age discrimination that the statute bars was the but-for cause of his termination. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). To determine whether an ADEA claim may survive summary judgment when there is no direct evidence of such age discrimination, we apply a burden-shifting framework akin to the one that the United States Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine whether a claim of race discrimination in employment under Title VII of the Civil Rights Act of 1964 may survive summary judgment. See Robinson, 950 F.3d at 24-25 (applying the McDonnell-Douglas framework to review a grant of summary judgment for the defendant on an ADEA claim).

- 9 -

The focus at the first step of the inquiry under this burden-shifting framework is on whether the plaintiff has put forth evidence from which a juror reasonably could find that a prima facie case of age discrimination has been established. To pass this first step of the inquiry, the plaintiff-employee must provide evidence from which a juror reasonably could find that: (1) he is at least forty years old; (2) his "work was sufficient to meet the employer's legitimate expectations"; (3) his "employer took adverse action against [him]"; and (4) "either younger persons were retained in the same position upon [his] termination or the employer did not treat age neutrally in taking the adverse action." Del Valle-Santana v. Servicios Legales de P.R., Inc., 804 F.3d 127, 129–30 (1st Cir. 2015).

If the plaintiff succeeds in getting past this first step of the inquiry, then, at the second step, the defendant must proffer "a legitimate, nondiscriminatory reason for" the employee's termination. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). If the defendant puts forth such a reason, then, at the third step of the inquiry, the burden of production shifts "back to the plaintiff, who must then show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory," for, otherwise, the defendant is entitled to summary judgment. Gómez–

- 10 -

González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (quoting Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010)).

Notably, "[t]o satisfy this burden with respect to pretext, the plaintiff must 'elucidate specific facts which would enable a jury to find that the reason given' by the defendant for the adverse employment action 'is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.'" Robinson, 950 F.3d at 25 (quoting Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 25 (1st Cir. 2015)). Thus, at this third step, the plaintiff must point to evidence that creates a genuine issue of disputed material fact as to whether the proffered reason was a pretext for an age-based motive. See id.

We agree with Zabala that he satisfied his burden to make out a prima facie case, and we have no doubt that Sanofi put forward a legitimate, nondiscriminatory reason for its decision to terminate Zabala's employment by hiring Bonet for the new, consolidated post: namely, that there was a business-related reason to create that single consolidated position and that Bonet's past experience with diabetes products and strong recent performance reviews made her more qualified to fill that new post than Zabala. See Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007) ("The employer's burden is

- 11 -

not a burden of persuasion; the employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive."). Nor does Zabala dispute that such a reason, if not a pretext for discrimination, would qualify as a legitimate, nondiscriminatory one. Thus, our focus is on whether Zabala has put forth evidence that suffices to create a genuine issue of disputed material fact as to whether the employer's proffered reason for selecting Bonet over him for the new, consolidated position was a pretext for age discrimination. See id. at 17 ("For a[n] . . . employee to withstand summary judgment in an age discrimination case, there must be some significantly probative evidence from which the factfinder can infer that the employer discharged the employee because of his age.").

Zabala's chief contention as to pretext is that the evidence supportably showed that Freeman and Bury had already decided to choose Bonet when they settled on the selection criteria of experience specific to the diabetes market and superior performance evaluations for the past few years and that, in consequence, a juror could reasonably conclude that Freeman and Bury chose the criteria to make sure that Bonet would be selected. Zabala points in this regard to "the chronological order of events," and, specifically, to the fact that Bury undertook the

comparison between Bonet and Zabala only after Freeman had already recommended the selection of Bonet.

But, the record is "uncontested" that Freeman's original reason for proposing Bonet over Zabala was that "he preferred her 'because of her expertise in diabetes and proven record and capabilities in the diabetes market.'"  Zabala puts forth no evidence, moreover, to show that Freeman chose those criteria in forming his original preference for Bonet to cover up the fact that he preferred her because she was younger than Zabala.  Nor do we see how, in the absence of any such evidence, there would be any basis for a juror to conclude from the nature of those criteria that they were sham criteria rather than legitimate job-related criteria that Freeman reasonably thought pertinent to a candidate's ability to do the job.  After all, diabetes experience was obviously a potentially relevant criterion, given the importance of diabetes products to Sanofi's revenues, and superior recent performance reviews obviously may bear on a candidate's relative qualification for a position.

There also is nothing in the record on which a juror reasonably could rely to find that Freeman did not believe that Bonet did in fact have more experience than Zabala with diabetes products and better recent performance reviews.  We note in this regard that nothing in the record indicates that Bonet's upward trajectory in her evaluation scores from 2010 to 2012, and Zabala's

corresponding downward trajectory, resulted from ratings that were given to them in anticipation that Sanofi Puerto Rico was going to consolidate, such that a juror would have any basis for finding that the reviews themselves had been rigged in Bonet's favor to advantage her in the event of a consolidation.

Thus, we see no basis for concluding that a juror could reasonably find from the chronology to which Zabala attributes such significance that his employer's proffered reason for acting as it did in choosing Bonet over Zabala was a cover for a preference to hire her because she was younger. Hence, that ground for concluding that he can meet his burden with respect to showing pretext at the third step of the burden-shifting inquiry is not a viable one.

Zabala does briefly assert that the fact that Febles and Freeman listed the respective ages of Bonet and Zabala in the comparison sent to Bury is itself evidence from which a jury could find that the selection of Bonet was based on age discrimination, rather than the nondiscriminatory-qualification-based reason that was proffered. But, "[i]solated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent," Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 329 (1st Cir. 1996); see also Paul v. Murphy, 948 F.3d 42, 54 (1st Cir. 2020) (finding that a supervisor's remark to an employee that "[y]ou are 64 no 65," does not alone provide a basis "from which a reasonable

- 14 -

juror could find that she was discriminated against based on her age"); Alberti v. Univ. of P.R., 818 F. Supp. 2d 452, 479 (D.P.R. 2011), aff'd sub nom. Alberti v. Carlo-Izquierdo, 548 F. App'x 625 (1st Cir. 2013) ("Reference to protected status without reflecting bias is not evidence of discrimination."). And, here, the record shows that the references to the age of the two candidates in the write-ups that were given to Bury were of just that kind.

In Febles's original email to Freeman, she included the fact that Bonet was a woman over forty years old but did not reference Zabala's gender or age. Before Freeman forwarded the information to Bury, he then added that Zabala was a male over fifty years old. In her deposition, Febles explained that she included the information on Bonet because she thought that it was relevant that Bonet was a member of two protected classes, but she did not include anything on Zabala because she did not know his age. There is thus no basis for finding on this record that, because the age of both candidates was set forth by the person who was providing information about the candidates to the ultimate decision maker, that decision maker's selection was based on the fact that one was younger than the other.

Zabala next takes issue with the fact that he was never offered the position of Business Intelligence Manager. But, it is uncontested that Zabala did not apply for the position even though Sanofi emailed all of its employees, including Zabala, and informed

them of the opening of the position in November of 2013 and provided them an opportunity to apply for it. Zabala does not explain how his former employer's failure to offer him specifically a job that he did not apply for when he had the opportunity to do so indicates that the defendants' reason for choosing Bonet was pretextual, let alone based on age discrimination. See Pages-Cahue v. Iberia Lineas Aereas de España, 82 F.3d 533, 539 (1st Cir. 1996) (noting that "employers face no . . . obligation" to offer "transfers or relocations" when reducing their labor force).

Finally, Zabala asserts that age discrimination was a common practice at Sanofi Puerto Rico. To support that contention, he relies in part on evidence of two instances in which Sanofi Puerto Rico chose to employ or to continue to employ the younger of two individuals. In one of those instances, though, the age differential was just one year. And, in any event, he points to no evidence that those decisions were made based on age, as he fails to show that the individual who was not selected in either instance was similarly situated to the one who was. In addition, Zabala points to the fact that 77 percent of new hires after 2013 were younger than fifty years old. But, he does not identify any evidence to show that less than 77 percent of Sanofi Puerto Rico's job applicants after 2013 were younger than fifty years old and thus that the ages of Sanofi Puerto Rico's hires were not proportional to the overall applicant pool. Accordingly, Zabala

- 16 -

fails to put forth evidence from which a juror reasonably could find any discriminatory pattern in Sanofi's employment practices. See Bennett v. Saint-Gobian Corp., 507 F.3d 23, 30 (1st Cir. 2007) (noting that a plaintiff "cannot rely exclusively on bald assertions, unsupported conclusions, or optimistic surmises").

## IV.

For these reasons, we **affirm** the District Court's grant of summary judgment.